**Ex parte Billy Ray JONES.**

**Nos. 72784, 72785.**

Court of Criminal Appeals of Texas,
En Banc.

Dec. 18, 1997.

John Lee Blagg, Brownwood, for appellant.

Grover Leeman Haney, Dist. Atty., Brownwood, Matthew Paul, State's Atty., Austin, for State.

*OPINION*

PER CURIAM.

These are applications for writs of habeas corpus which were transmitted to this Court pursuant to the provisions of Article 11.07, V.A.C.C.P. *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App.1967).

Applicant pled guilty to the offense of criminal mischief in cause number 12–988 on April 22, 1993. Adjudication of his guilt was deferred and he was placed on community supervision for six years and assessed a fine of $1,000.00. No direct appeal was taken. Applicant subsequently pled guilty to aggravated assault in cause number 13–373 on September 6, 1994. Adjudication of his guilt was deferred and he was placed on community supervision for a period of five years and assessed a fine of $500.00. Again, no appeal was taken. The State filed motions to adjudicate in both causes alleging, in paragraph 4, that he had committed a different offense in which he had used a deadly weapon. Following a hearing on July 23, 1996, the trial court adjudicated Applicant guilty and assessed punishment at confinement for seven years in both causes. In each judgment the following statement appears:

> The Court further finds that the Defendant used or exhibited a deadly weapon, to-wit: a firearm, during the commission of the Aggravated Assault that was alleged in paragraph 4 of the Motion to Adjudicate and the Court found that that allegation was "true" by a preponderance of the evidence, and that punishment be fixed as assessed by the Court, by confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of Seven (7) Years.

This statement was repeated in that portion of each judgment in which Applicant was ordered delivered to the penitentiary for incarceration. No objection is alleged to have been made.

■ Applicant argues, "The trial court erred in making such a Deadly Weapon finding because his finding is based upon allegation # 4 in State's motion to adjudicate, an alleged event whose date and actions are totally unrelated to the offense of Aggravated Assault for which Applicant was indicted in Cause 13–373." This argument calls into question the power of the trial court to enter an affirmative finding of use or exhibition of a deadly weapon under the circumstances presented. There are no cases addressing a similar factual situation. The statute in effect at the time read, in pertinent part:

Sec. 3g. (a) the provisions of Section 3 of this article do not apply:

\* \* \* \* \* \*

(2) to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of *a* felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

Article 42.12, § 3g (a)(2), V.A.C.C.P. [emphasis added]. Obviously, the trial court read the statute literally, that use or exhibition of a deadly weapon in *any* felony can be used to enter an affirmative finding in any other case. There is no showing of any connection between the offense in which Applicant is alleged to have used a deadly weapon and the offense in which the affirmative finding was entered, other than the former was used to revoke community supervision granted in the latter.

There are two ways to read the statute, in our view. First, the statute can be read as the trial court obviously did, that the use of the word "a" in the phrase "a felony" is used to mean the use of a deadly weapon in *any* felony is sufficient to allow the entry of an affirmative finding in another case, without any connection between the two offenses. The other way to view the statutory language is to read the word "a" as a part of the phrase "a felony," used to distinguish the

case at trial from misdemeanor offenses and that the felony offense referred to is the same as that being tried. Both views are supportable from the language used by the Legislature. However, this duality creates an ambiguity in the statute.

■ When faced with an ambiguity requiring statutory interpretation we seek to effectuate the collective intent of the legislators who enacted the law. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991). Only if the plain language of the statute would lead to absurd results or if the language is not plain but ambiguous may this Court permissibly consider such extratextual factors as executive or administrative interpretation of the statute or the legislative history. *Id.*, at 785–86.

During committee consideration of Article 42.12, § 3f, V.A.C.C.P., Senator Meier, the sponsor of the bill, stated:

The purpose of the bill is not just to maintain mandatory supervision, Mr. Chairman, and members, I want to be sure that Mr. Duncan understands the purpose of the bill is to introduce a system of mandatory supervision and to single out certain aggravated crimes which were set out in 3e and to attempt to deter the commission of those crimes by ensuring calculation of good time credit and such as the *obtaining* of probation and such as the time for which the person is going to be eligible for parole are denied the persons who commit those serious offenses in those under the circumstances. And that's the purpose of the bill.

*Hearings on S.B. 152 Before the Senate Jurisprudence Committee, 65th Leg.* (February 15, 1977)(Archived at offices of Senate Staff Services). In testimony before the Senate Jurisprudence Committee in favor of the bill, Mr. Dean, General Counsel to the Governor and a proponent of the legislation, in summing up the general consensus as to the purpose of the bill stated:

Of course, Senator, if I might, I think the point we're trying to get to when we use the language use or exhibited is simply to say that, that if a person is going to commit an offense, leave that firearm at home. [D]on't take it with you, don't have

the opportunity to use it. [D]on't exhibit it, you know just don't be around a firearm if you're going to commit an offense, because you know that if you do, you know the offense, or the penalty or the, in a combination, is going to perhaps be, be more onerous then if you commit the offense without the use of a firearm.

*Hearings on S.B. 152 Before the Senate Jurisprudence Committee, 65th Leg.* (February 15, 1977)(statement of General Counsel to the governor)(Archived at offices of Senate Staff Services). That sentiment was iterated by Senator Tarrant during the short debate at the second reading when he stated the purpose of the bill was "so that the people that commit those serious crimes with the use of a deadly weapon would have more serious consequences which I think are laudable." Debate on S.B. 152 on the Floor of the Senate, 65th Leg. (March 22, 1977)(Archived at offices of Senate Staff Services).

The debate in the House of Representatives produced similar statements of purpose. For example, Representative Uher, the House sponsor, stated,

It is a tough bill. It is a bill though that deals with the situation of those people who have been involved with serious criminal acts. Those acts almost in every instance are those that deal with the violent crime, the crime that deals with a weapon such as a pistol or a shotgun or a rifle, or some other lethal weapon, has intimidated and perhaps injured or killed or maimed some victim. It provides that there will be no probation in certain circumstances in a case dealing with a violent act. It sets out new formulas for the determination of parole and supervision.

Debate on H.B. 571, 65th Leg. (May 12, 1977)(Archived at the House of Representatives, Video–Audio Services). In explaining a proposed amendment to the bill, Representative Nabers stated, "It prohibits probation by the court or the jury if a person commits a second degree felony or higher and in the commission of that offense exhibits and finds, or uses, a deadly weapon. The court must so find." *Ibid.*

The legislators' statements show that the Legislature focussed on the punishment for the offense for which the defendant is being tried and the use or exhibition of a deadly weapon during the commission of that offense. As Mr. Dean pointed out, under the statute the penalty for the offense will be more onerous when the offense is committed with a firearm. Representative Uher observed that probation is unavailable in cases dealing with a violent act. That again indicates the Legislature was concerned with punishment for a crime involving a deadly weapon. Because a defendant is punished for the crime for which he is tried, the use or exhibition of a deadly weapon must be during the commission of that crime for an affirmative finding to be made and entered. Therefore, we hold that Art. 42.12, § 3g (a)(2), requires the use of the deadly weapon to be during the transaction from which a conviction for a felony offense is obtained in order to trigger the entry of an affirmative finding of use or exhibition of that weapon. Accordingly, Applicant is entitled to relief.

The judgments adjudicating guilt in cause numbers 12–988 and 13–373 are ordered reformed to delete any mention of affirmative findings of use or exhibition of a deadly weapon.

Copies of this opinion shall be sent to the Texas Board of Pardons and Paroles as well as the Texas Department of Criminal Justice, Institutional and Paroles Divisions.