# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00602-CR

**Adalberto Mendez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. 2025008, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Adalberto Mendez appeals his conviction by a jury for aggravated assault with a deadly weapon and sentence of seven years' confinement. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2005). In two issues, he argues that the evidence was insufficient to support his conviction and that the trial court erred by denying his request for an instruction on the lesser-included offense of assault. We will affirm.

## BACKGROUND

On December 25, 2002, Austin police and paramedics responded to a call regarding Hispanic males fighting at a soup kitchen on East Cesar Chavez Street. Officer William Williamson arrived and observed a Hispanic male, Enoc Salas, sitting on the curb. Salas does not speak English, and Williamson is not fluent in Spanish. However, Williamson noticed a tear in Salas's jacket just

above the belt line, and saw that there was blood on his shirt. After Williamson pointed at the blood, Salas lifted his shirt and Williamson saw that Salas's stomach had been punctured at the area where the jacket was torn. Salas was very upset and, while speaking in Spanish, pointed at a Hispanic man who was standing across the street at a bus stop.

Gil Torres, a City of Austin paramedic who is fluent in Spanish, arrived and began treating Salas and translating for the police.[1] Torres testified that Salas said he was stabbed with a pair of scissors and identified Mendez as the person who stabbed him. Williamson and another officer, Corporal Miller, then approached Mendez.[2] Williamson immediately patted him down for a weapon, *see Terry v. Ohio*, 392 U.S. 1, 30-31 (U.S. 1968), and confiscated a pair of scissors that were bent at the tip. Mendez was arrested and charged with aggravated assault with a deadly weapon. Salas was transported to the emergency room at Brackenridge Hospital where he was treated and gave a written statement regarding the incident.

At trial, seven witnesses, including the police officers at the scene and medical personnel, testified for the State. Salas did not testify.[3] However, his medical records and photographs of his injury were admitted. The State rested, and the court denied Mendez's motion for a directed verdict, in which he argued that there was no evidence that the scissors constituted a deadly weapon. Shortly thereafter, the defense rested without calling any witnesses. At the jury

---

[1] The paramedics arrived in the area before the police, but were advised not to enter until the police determined that the area was safe.

[2] Mendez originally identified himself as "Hector Suarez" but after being arrested, the police determined that he was Adalberto Mendez.

[3] In its opening statement, the State told the jury that they were unable to locate Salas before the trial; he was difficult to locate because he was homeless and was not a United States citizen.

charge conference, the court denied Mendez's request for an instruction regarding the lesser-included offense of assault. The jury found Mendez guilty of aggravated assault with a deadly weapon and, after considering his previous conviction for burglary of a habitation, the court sentenced him to seven years' confinement. This appeal followed.

## DISCUSSION

In two issues, Mendez contends that the evidence was insufficient to support a deadly weapon finding and that the trial court erred by denying his request for an instruction on the lesser-included offense of assault.

### Sufficiency of the evidence

First, Mendez urges us to find that the evidence was factually and legally insufficient to support his conviction. Specifically, he argues that because neither the victim nor the defendant testified, there was no evidence that either (1) the weapon caused death or serious bodily injury or (2) the weapon was capable of causing serious bodily injury and was displayed or used in a manner that establishes the intent to use the weapon to cause serious bodily injury. *See* Tex. Pen. Code Ann. § 22.02.

*Standard of review*

In a factual-sufficiency analysis, the evidence is viewed in a neutral light. *Drichas v. State*, No. PD-1015-04, 2005 Tex. Crim. App. LEXIS 1775, at *9 (Tex. Crim. App. October 19, 2005) (citing *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996)). There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral

3

light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). However, there are two ways in which the evidence may be insufficient—either the evidence supporting the finding, considered alone, is too weak to support the jury's finding beyond a reasonable doubt or the contravening evidence may be so strong that the State could not have met its burden of proof. *Drichas*, 2005 Tex. Crim. App. LEXIS 1775, at *9 (citing *Zuniga*, 144 S.W.3d at 484-85).

In assessing the legal sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the jury's verdict and determine whether, based on the evidence and reasonable inferences, a rational jury could have found the accused guilty of all of the elements of the offense beyond a reasonable doubt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), and *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999)). To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that (1) the object meets the statutory definition of a dangerous weapon, *see id.*; (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained, *see Ex parte Jones*, 957 S.W.2d 849, 851 (Tex. Crim. App. 1997); and (3) that other people were put in actual danger. *See Drichas*, 2005 Tex. Crim. App. LEXIS 1775, at *6 (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)).

*Evidence of aggravated assault*

An individual commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Pen. Code Ann. § 22.01(a)(1) (West Supp. 2005). Aggravated assault is committed if the individual commits assault as defined in section 22.01 and (1) causes

4

serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault. *See id*. § 22.02(a).

The jury was charged that a "deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id*. § 1.07(a)(17)(B) (West Supp. 2005). To determine whether in the manner of their use or intended use the scissors were "capable" of causing death or serious bodily injury, the "capability" must be evaluated in light of the facts that actually existed when the assault was committed. *Drichas*, 2005 Tex. Crim. App. LEXIS 1775, at *10 (citing *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997, pet. dism'd)). Objects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense. *Id*. at *7 (citing *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991)). The nature of the inflicted wounds is a factor to be considered, but wounds are not a prerequisite to a deadly weapon finding. *Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. 1980); *see Denham v. State*, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978). The most important criteria is the manner in which the weapon was used. *Dominique*, 598 S.W.2d at 286.

Dr. Josh Trutt, an emergency room physician at Brackenridge Hospital, testified that Salas came into the emergency room on December 25th with "a half-centimeter laceration that was a couple of centimeters above his navel." Trutt documented that Salas had been stabbed with a pair of scissors.[4] Salas's medical records state that the scissors used in the assault were approximately

---

[4] Trutt is not fluent in Spanish and did not recall who told him that Salas had been stabbed with a pair of scissors. Leonard Sepeda, a medical interpreter at Brackenridge, testified that he asked Salas how he had been stabbed, and that Salas told him he thought he was stabbed with scissors.

5

three inches long and were bent after the first inch.  Scissors matching that description were confiscated from Mendez near the scene of the assault.  The scissors were introduced into evidence and there was testimony that they were made of metal and bent at the tips.

Trutt testified that a puncture wound to the abdomen can be "very dangerous" because if it punctures the inner lining of the abdominal wall, the peritoneum, it could "leak intestinal contents which are heavily contaminated with bacteria" and could cause a life-threatening infection.  In that case, emergency surgery would be performed immediately to ensure that there were no holes in the bowel.  Trutt also testified that the peritoneum can be an inch under the surface and that Salas's peritoneum was "not more than two inches" under the surface.  Thus, according to Trutt, the scissors that were used in the assault, if used to stab someone in the abdomen, were capable of being a deadly weapon.  In fact, although Trutt's physical examination revealed that the scissors probably did not perforate Salas's peritoneum, he ordered a CAT scan "because this is potentially a life-threatening problem."[5]

Mendez argues that there was no evidence regarding how sharp the scissors were or how or why they were used against Salas.  He contends that if we include scissors within the statutory definition of "deadly weapon," then any injury caused by a butter knife, paper clip, or sharpened pencil could subject an individual to charges for aggravated assault.  Furthermore, he asserts, "without providing anything more than a translated statement that he was stabbed, a rational

---

[5] As Trutt explained, a CAT scan "is a fancy X-ray where you lie on a table and a camera moves around your body and takes pictures in multiple dimensions that can then be reconstructed by a computer into a virtual three-dimensional picture of your insides."

trier of fact does not have enough evidence to make the conclusion that the scissors were meant to be used as a deadly weapon." We disagree.

The legislature has defined a deadly weapon as anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(B) (emphasis added). Trutt testified that the scissors used to stab Salas were three inches long, that Salas's peritoneum was not more than two inches below the surface, and that puncturing the peritoneum could cause death or serious bodily injury. Moreover, the fact that neither Salas nor Mendez testified about the manner in which the scissors were used does not preclude the jury's determination that the scissors were a deadly weapon. There was testimony that Salas identified Mendez as his assailant; that Salas had been stabbed in the abdomen a few inches above the belt line; and that the stabbing was severe enough to bend the tips of the scissors after the first inch of metal. Although Trutt agreed on cross-examination that the width of the laceration was less than a quarter of an inch and that the CAT scan revealed that the injury was not actually life-threatening, the nature of the wound is only one factor which we consider, and wounds are not a prerequisite to a deadly weapon finding. *See Dominique*, 598 S.W.2d at 286.

Furthermore, a jury may use its common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Guia v. State*, No. 03-99-00190-CR, 2000 Tex. App. LEXIS 2556, at *14-15 (Tex. App.—Austin, April 20, 2000, no pet.) (not designated for publication); *see Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd); *Wawrykow v. State*, 866 S.W.2d 87, 88 (Tex. App.—Beaumont 1993, pet. ref'd). Although scissors

7

are not *per se* dangerous, the manner in which they were used during the assault—a stabbing in the abdomen which resulted in bending the tips of the metal—qualified them as a deadly weapon in this case. We conclude that in light of the facts that actually existed when the assault was committed, the scissors were capable of causing death or serious bodily injury. *See Drichas*, 2005 Tex. Crim. App. LEXIS 1775, at \*10. We hold that the evidence supporting the finding, considered alone, was not too weak to support the jury's finding beyond a reasonable doubt and the contravening evidence was not so strong that the State could not have met its burden of proof. *See Zuniga*, 144 S.W.3d at 484-85. Furthermore, considering all of the evidence in the light most favorable to the jury's verdict, a rational jury could have found Mendez guilty of all of the elements of the offense beyond a reasonable doubt. *See Guevara*, 152 S.W.3d at 49. We overrule Mendez's first issue.

**Whether assault should have been submitted as a lesser-included offense**

In his second issue, Mendez contends that the trial court should have given an instruction on misdemeanor assault as a lesser-included offense of aggravated assault because "the minor nature of the injury, the size of the scissors, and the lack of fear reported by [Salas] all suggest a different interpretation that this was an assault and not an aggravated assault." We will review the trial court's decision for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

A defendant is entitled to a lesser-included offense instruction in the jury charge if (1) the requested charge is a lesser-included offense of the offense charged, and (2) there is some evidence that if the defendant is guilty, he is guilty only of the lesser offense. *Irving v. State*, No.

PD-91-04, 2005 Tex. Crim. App. LEXIS 1956, at *5 (Tex. Crim. App. Nov. 9, 2005) (citing *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005) and *Jacob v. State*, 892 S.W.2d 905, 907 (Tex. Crim. App. 1995)). Simple assault is not always a lesser-included offense of aggravated assault. *See Irving*, 2005 Tex. Crim. App. LEXIS 1956, at *6.

An offense is a lesser-included offense only if (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981); *see Irving*, 2005 Tex. Crim. App. LEXIS 1956, at *5-6.

In reviewing a trial court's decision to deny a requested instruction for a lesser-included offense, we consider the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. *Hayward*, 158 S.W.3d at 478 (citing *Jacob*, 892 S.W.2d at 907-08). More specifically, we examine the statutory elements of the charged offense as modified by the indictment. *Id*. Next, we examine the elements of the offense claimed to be a lesser-included offense to see if the elements are functionally the same as or less than those required to prove the charged offense. *Id*. Then we examine the evidence actually presented to prove the elements of the charged offense to see if that proof also shows the lesser-included offense. *Id*. at 478-79. In other words, there must be some evidence from which a rational jury could acquit Mendez of aggravated

9

assault while convicting him of the lesser-included offense of assault. *See Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005) (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). In making this decision, we evaluate the evidence in the context of the entire record, but do not consider whether the evidence is credible, controverted, or in conflict with other evidence. *See id.* (citing *Havard v. State*, 800 S.W.2d 195, 216 (Tex. Crim. App. 1990) (op. on reh'g)).

First, we consider whether assault was a lesser-included offense of aggravated assault in this case. The indictment alleges that Mendez committed the offense of aggravated assault: "intentionally, knowingly, and recklessly" causing bodily injury to Enoc Salas by stabbing and cutting him. The indictment also alleges that Mendez used and exhibited a deadly weapon, to-wit: scissors, during the commission of the offense. The statutory elements of aggravated assault are: (1) assault as defined in section 22.01 of the penal code, and (2) use or exhibition of a deadly weapon during the commission of the assault. *See* Tex. Pen. Code Ann. § 22.02(a)(2). An individual commits assault as defined in section 22.01 if he "intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* § 22.01. In this case, Mendez stabbed Salas with a pair of scissors. Unlike *Irving*, he does not base his argument on a different factual scenario. *See Irving*, 2005 Tex. Crim. App. LEXIS 1956, at *6-7. The elements of misdemeanor assault are less than what was required to prove aggravated assault because the aggravated assault charge in this case required the State to prove use of a deadly weapon. Thus, assault was a lesser-included offense.

Next, we consider the evidence actually presented to prove the elements of aggravated assault to see if that proof also shows the offense of assault. In this case, the only difference between

10

the charges of aggravated assault and misdemeanor assault involves whether a deadly weapon was used in the assault.

There was uncontroverted evidence that Salas had been stabbed. Torres testified that Salas said he was stabbed with a pair of scissors and identified Mendez as the person who stabbed him. Trutt testified that he was told that Salas had been stabbed with a pair of scissors. Officer Williamson confiscated from Mendez a pair of scissors with bent tips, which had apparently caused Salas's injury.[6] Trutt also testified that the scissors were capable of causing death or serious bodily injury.

Mendez complains that Trutt's testimony did not establish serious bodily injury and that "the minor nature of the injury, the size of the scissors, and the lack of fear reported by [Salas] all suggest a different interpretation that this was an assault and not an aggravated assault." However, a finding of aggravated assault does not require evidence of serious bodily injury, a certain type of injury, a large deadly weapon, or an expression of fear by the victim. *See* Tex. Pen. Code Ann. §§ 22.01, .02. Mendez does not otherwise explain how the evidence presented at trial could result in a rational jury acquitting him of aggravated assault while convicting him of misdemeanor assault. *See Hall*, 158 S.W.3d at 473. We hold that the trial court did not abuse its discretion by denying Mendez's request for an instruction on the lesser-included offense of assault.

---

[6] The scissors that were confiscated from Mendez were admitted into evidence. Torres testified that he saw the scissors that were used to stab Salas and that they were the same ones which were admitted into evidence.

## CONCLUSION

Having overruled Mendez's issues, we affirm the order of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:    December 22, 2005

Do Not Publish