Affirmed and Memorandum Opinion on Remand filed November 19,
2009.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-06-00528-CR



 

Antonio Sierra, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 1064598



 

MEMORANDUM OPINION ON REMAND

 

Appellant Antonio Sierra appeals his conviction for
driving while intoxicated with a deadly weapon finding.  He contends the
evidence is factually insufficient to support the jury’s deadly weapon
finding.  We affirm.  

This case comes before us a second time.  In our
first opinion, we held that (1) the evidence is legally and factually
sufficient to prove that appellant was intoxicated at the time he was operating
his automobile; and (2) the evidence is legally insufficient to support the
jury’s finding that appellant used or exhibited his automobile as a deadly
weapon during commission of the offense of driving while intoxicated.  Sierra
v. State, No. 14-06-0528-CR, 2007 WL 2386375 (Tex. App.—Houston [14th
Dist.] Aug. 23, 2007) (not designated for publication), rev’d, 280
S.W.3d 250 (Tex. Crim. App. 2009).  The Court of Criminal Appeals granted the
State’s petition for discretionary review and reversed, holding that the
evidence is legally sufficient to support the jury’s deadly weapon finding.  Sierra
v. State, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009).   

As directed by the Court of Criminal Appeals, we now
address appellant’s remaining issue concerning whether the evidence is
factually sufficient to support the jury’s deadly weapon finding. 

Background

Laura Pacheco
and her boyfriend, Hector Salinas Almendarez, were leaving a Houston apartment
complex around 4:30 p.m. on August 20, 2005.  As Pacheco pulled out of the
complex, appellant’s automobile collided with Pacheco’s automobile.  Appellant’s
automobile hit the driver’s side of Pacheco’s automobile and pushed it up onto
the center median.

At trial, Almendarez testified that Pacheco fully
stopped her automobile and waited for the oncoming traffic to pass before
pulling out of the apartment complex.  Almendarez, who was sitting in the front
passenger seat, saw appellant traveling south in the outer lane.  He also
noticed another automobile, which was in front of appellant, make a right turn
into the apartment complex.  At this point, Almendarez lost sight of appellant
because the automobile entering the complex blocked his view.  Almendarez then
saw appellant, traveling south in the inner lane, right before the collision.  Almendarez
testified that appellant was traveling “at a high speed.” 

Officer Douglas Wayne Ertons of the Houston Police
Department’s accident division investigated the scene.  He observed that: the
road was dry; there were no skid marks leading up to the point of impact; there
was a gouge in the road near the entrance and exit of the apartment complex;
and there were sideways skid marks leading up to where Pacheco’s automobile was
resting.  Ertons testified that the gouge in the road showed the point of impact,
and that the sideways motion of Pacheco’s automobile’s tires created the skid
marks leading to the median.  Ertons stated that there were three possibilities
for the absence of skid marks leading up to the point of impact: (1) appellant
did not brake; (2) appellant did not apply the brakes hard enough; or (3) appellant’s
automobile had antilock brakes — meaning that, even if appellant “applied the
brakes . . . [,] they would not skid . . . .” 

Ertons spoke to appellant at the scene and asked him
to identify where he was when he first saw Pacheco.  Based on appellant’s
answer, Ertons stated that an average, undistracted driver reacting to Pacheco’s
presence under similar conditions and traveling at the posted speed limit of 35
miles per hour would have been able to come to a complete stop 71 feet before
the point of impact.  Ertons stated that he was uncertain whether appellant’s account
of his location at the time he first saw Pacheco was entirely accurate because
he did not know whether the Spanish-speaking translator specifically asked appellant
if he was near, past, or right at the location appellant identified.

Ertons
estimated that appellant was traveling at a speed between public roadway and
highway speeds.  Ertons originally calculated the speed of appellant’s automobile
at 28 miles per hour, but later testified that his calculation was inaccurate
because he could not account for the energy or momentum loss from Pacheco’s
automobile striking and then resting on top of the median.    

As a result of the collision, Pacheco sustained a
subdural hemorrhage, a laceration to her spleen, a left kidney injury, and
fractures to her ribs and pelvis.  She had surgery to remove her spleen and
underwent extensive treatment and rehabilitation for her other injuries.  She
remained in the hospital for four weeks.     

Appellant was arrested for driving while intoxicated.
He failed several field sobriety tests, and his blood
and breath samples revealed that his alcohol concentration was approximately
.12, exceeding the legal limit of .08.
 During his field sobriety test, appellant admitted to consuming 13 beers the
previous night. 

Analysis

The sole remaining issue on remand is whether the
evidence is factually sufficient to support the jury’s deadly weapon finding. 
In reviewing factual sufficiency of the evidence, an appellate court must
determine whether (1) the evidence introduced to support the verdict is “so
weak” that the factfinder’s verdict seems “clearly wrong and manifestly
unjust,” or (2) the factfinder’s verdict is nevertheless against the great
weight and preponderance of the evidence.  Watson v. State, 204 S.W.3d 404,
414-15 (Tex. Crim. App. 2006).  In a factual sufficiency review, the court
views all of the evidence in a neutral light.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000) (en banc).  If the court finds the evidence
factually insufficient, the court must remand the case for a new trial.  Clewis
v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

In order to declare that an evidentiary conflict
justifies a new trial, an appellate court must rely on some objective basis in
the record demonstrating that the great weight and preponderance of the
evidence contradicts the jury’s verdict.  See Lancon v. State, 253
S.W.3d 699, 706-07 (Tex. Crim. App. 2008).  An appellate court should not
intrude upon the factfinder’s role as the sole judge of the weight and
credibility of witness testimony.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex. Crim. App. 2002).  The factfinder may choose to believe or disbelieve any
portion of the testimony presented at trial.  Bargas v. State, 252
S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (en banc)).  Due
deference must be given to the factfinder’s determinations concerning the
weight and credibility of the evidence and reversal of those determinations is
appropriate only to prevent the occurrence of a manifest injustice.  Martinez
v. State, 129 S.W.3d 101, 106 (Tex. Crim. App. 2004). 

  A “deadly weapon” is “anything that in the manner
of its use or intended use is capable of causing death or serious bodily
injury.”  Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon 2003).  The
evidence must demonstrate that the deadly weapon was used or revealed “during
the transaction from which” the felony conviction was obtained.  Cates v.
State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (quoting Ex parte
Jones, 957 S.W.2d 849, 851 (Tex. Crim. App. 1997)).  There must be evidence
that others were actually endangered to sustain a deadly weapon finding.  Id. 
Hypothetical potential for dangers if others had been present is not
sufficient.  Id.  

An automobile can be a deadly weapon if it is used in
a manner capable of causing death or serious bodily injury to others.  Id.;
Tyra v. State, 897 S.W.2d 796, 798-99 (Tex. Crim. App. 1995).  Specific
intent to use an automobile as a deadly weapon is not required.  McCain v.
State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).  To determine whether an
automobile was used as a deadly weapon, we (1) “evaluate the manner in which
the defendant used the [automobile] during the felony;” and (2) “consider
whether, during the felony, the automobile was capable of causing death or
serious bodily injury.”  Sierra, 280 S.W.3d at 255.  

We first consider the manner in which appellant used his
automobile.  In doing so, we examine whether appellant’s driving was reckless
or dangerous.  Id.  Courts have considered several factors in examining
whether a defendant’s driving was reckless or dangerous: (1) intoxication, Tyra,
897 S.W.2d at 798-99; (2) speeding, Drichas v. State, 175 S.W.3d 795,
797 (Tex. Crim. App. 2005); (3) disregarding traffic signs and signals, id.;
and (4) driving erratically, id; Mann v. State, 13 S.W.3d 89,
91-92 (Tex. App.—Austin 2000), aff’d, 58 S.W.3d 132 (Tex. Crim. App.
2001).    

Appellant was legally intoxicated at the time he was
operating his automobile.  Ertons estimated that appellant was traveling at a
speed between public roadway, which a reasonable jury could infer to mean 35
miles per hour, and highway speeds, which a reasonable jury could infer to mean
up to 70 miles per hour.  Almendarez testified that appellant was traveling “at
a high speed.”  Further, there were no skid marks leading up to the point of
impact.  There is no record evidence in this case of appellant disregarding
traffic signs and signals or driving erratically.  Relying on appellant’s
account of where he was when he first saw Pacheco, Ertons testified that a normal
undistracted person, who was driving 35 miles per hour would have been able to
stop approximately 71 feet before the point of impact.  Based on this evidence,
a reasonable jury could have concluded that appellant was driving recklessly or
dangerously while intoxicated.  

We next consider whether appellant’s automobile was
capable of causing death or serious bodily injury during commission of the
offense of driving while intoxicated.  Anything actually used to cause death or
serious bodily injury is capable of causing death or serious bodily injury.  Tyra,
897 S.W.2d at 798; Ex parte Beck, 769 S.W.2d 525, 526-27 (Tex. Crim.
App. 1989).                  

As a result of her collision with appellant, Pacheco
sustained a subdural hemorrhage, a laceration to her spleen, a left kidney
injury, and fractures to her ribs and pelvis.  Surgery was required to have her
spleen removed, and she underwent extensive treatment and rehabilitation for
her other injuries.  She remained in the hospital for four weeks.  Upon
discharge, she required maximum to moderate assistance with daily living and
mobility.  In its review of the legal sufficiency of the evidence, the Court of
Criminal Appeals stated that “[t]he record establishes that [appellant’s
automobile] did indeed cause serious bodily injury to Pacheco.”  Sierra,
280 S.W.3d at 256.  We conclude that a reasonable jury could have found that
appellant’s automobile was capable of causing death or serious bodily injury during
the commission of the offense of driving while intoxicated.  

Considering all of the evidence in a neutral light,
we conclude the evidence is factually sufficient to support the jury’s finding
that appellant used his automobile as a deadly weapon during the commission of
the offense of driving while intoxicated.  A reasonable jury could have found
that appellant drove his automobile in a reckless or dangerous manner while driving
while intoxicated, and that appellant’s automobile was capable of causing death
or serious bodily injury during the felony.  The jury’s finding is neither
clearly wrong nor manifestly unjust.  See Lancon, 253 S.W.3d at 706-07; Watson,
204 S.W.3d at 414-15.  

Conclusion

            We affirm the
trial court’s judgment.                                                                               

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Justices Yates, Seymore,
and Boyce.