

NUMBER 13-12-00174-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JESSIE JEROME WHITE,**                             **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                **Appellee.**

### On appeal from the 329th District Court
### of Wharton County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

Appellant, Jessie Jerome White, pleaded guilty to the offense of evading arrest or detention with a motor vehicle, enhanced to a second-degree felony. *See* Tex. Penal Code Ann. § 38.04 (West Supp. 2011). However, White pleaded "not true" to the allegation in the State's indictment that he used a deadly weapon, to wit: an automobile, in the course of committing the offense. A special issue on the deadly weapon allegation

was submitted to a Wharton County jury, which found in the affirmative. Accordingly, the trial court sentenced White to twenty years' imprisonment with the Texas Department of Criminal Justice, Institutional Division. By two issues, White asserts that: (1) the trial court erred in submitting the special issue of use of a deadly weapon to the jury, when the defendant had previously elected for the court to assess punishment in the event of conviction; and (2) the evidence was insufficient to support an affirmative finding regarding use of a deadly weapon. We affirm.

## I. BACKGROUND

A Wharton County grand jury indicted White for intentionally fleeing from arrest or detention while using a motor vehicle. *See id.* The indictment further alleged, among other things, that during the course of committing the aforementioned offense, White used his automobile as a deadly weapon—that is, "in the manner of its use, was capable of causing death or serious bodily injury." At his trial by jury, White pleaded guilty in open court to the evading arrest or detention charge, but pleaded "not true" to the deadly weapon allegation.[1]

The State presented the following evidence at trial. On September 28, 2010, White led up to fifteen Wharton County law enforcement officers in a car chase through the streets and surrounding areas of the City of Wharton. The State called two City of Wharton police officers who took part in the chase as witnesses.

Officer Bobby Cadriel was the first to testify. Without objection, the State played a videotape for the jury which depicted the pursuit from Officer Cadriel's police unit's dashboard camera. Officer Cadriel testified as the video played. The chase began

---

[1] Prior to entering this plea, White filed a motion which elected the trial court to assess punishment "in the event a verdict of guilty is returned by the jury."

shortly before 1:00 p.m., in which Officer Cadriel tailed another officer, Justin Moran, who drove immediately behind White. Officer Cadriel stated that: (1) White did not drive within his proper lane for "quite a distance," before correcting himself, (2) drove on the right-hand shoulder lane, slammed on his brakes, and then sped up again, and (3) this action caused Officer Moran to slam on his brakes and swerve, which also caused Cadriel to slow down, so as to not rear-end Officer Moran's unit. Officer Cadriel testified that White approached speeds between 65 to 90 miles per hour during the pursuit, which were far above the posted speed limit of 55 miles per hour. Cadriel also noted that White disregarded stop signs during the chase. According to Cadriel, vehicles that traveled in White's opposite direction stopped in order to let police officers pass. Toward the end of the pursuit, Officer Cadriel testified that the road conditions "worsened" to loose gravel and dirt, "which can be [a] hard [surface] to maintain control of [a] vehicle." After White stopped his vehicle, Officer Cadriel observed that a passenger remained inside of White's vehicle. During cross-examination, Officer Cadriel admitted that the weather was clear that day, the roads were dry, and described the visibility as "good."

Officer Moran testified next. As with Officer Cadriel, the State played more video footage taken from the dashboard camera mounted on Officer's Moran's police unit, and Officer Moran also testified as the video played. Officer Moran told the jury that at the point in which the officer slammed his brakes and his unit began to swerve, he was "scared" and "concerned" that he was going to lose control of his vehicle and possibly injure himself or another driver. Officer Moran estimated that White's vehicle traveled at speeds of up to 95 miles per hour.

3

The jury returned an affirmative finding that White used his vehicle as a deadly weapon. Subsequently, the trial court assessed White's punishment at twenty years' imprisonment with the Texas Department of Criminal Justice, Institutional Division. This appeal ensued.

## II.    DEADLY WEAPON FINDING

By his first issue, White contends that the trial court erred in submitting the special issue of use of a deadly weapon to the jury when the defendant had previously elected for the trial court to assess punishment in the event of conviction.

### A. Preservation of Error

Generally, as a prerequisite to presenting a complaint for appellate review, the record must show that:

(1)    a complaint was made to the trial court by a timely request, objection or motion that:

(a) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(b) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2)    the trial court:

(a) ruled on the request, objection, or motion, either expressly or implicitly; or

(b) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1(a); *see Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009) (holding that "[p]reservation of error is a systemic requirement of every appeal").

4

The State argues that White failed to object to the deadly weapon submission to the jury. We agree.[2] The record reflects that White had several opportunities to preserve error in this case, but failed to do so. First, after White pleaded guilty solely on the evading detention or arrest charge and "not true" for the use of a deadly weapon allegation, White's counsel proceeded forward with trial. Next, White's attorney stated that he had "no objection" to the jury charge at the charge conference. Finally, White's attorney argued during closing arguments as to why the jury should find that White did not use or exhibit a deadly in the commission of this offense. Accordingly, we conclude that White failed to preserve error for review on appeal. *See* TEX. R. APP. P. 33.1(a).

White's first issue is overruled.

## III.    SUFFICIENCY CHALLENGE

By his second issue, White asserts that insufficient evidence supports the jury's affirmative finding that he used his automobile as a deadly weapon.

### A. Standard of Review

When reviewing a defendant's sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (citing *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality op.)); *see Jackson v.*

---

[2] Generally, jury-charge issues are analyzed under a unique standard of review. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (en banc); *see also Almanza v. State*, 686 S.W.2d 157, 160–74 (Tex. Crim. App. 1984) (en banc). However, in light of the procedural history of this case, we will analyze the issue before us under Texas Rule of Appellate Procedure 33.1(a). Even assuming without deciding that this issue amounts to a jury-charge issue, we nonetheless conclude that no error exists. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985) (en banc) ("the trier of facts' verdict on the indictment may constitute an affirmative finding").

5

*Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury. *Montgomery*, 369 S.W.3d at 192. Thus, our duty is "simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged." *Id.* (internal citations omitted). When faced with a record supporting contradicting inferences, we must presume that the jury resolved such conflicts in favor of the verdict, even if not explicitly stated in the record. *Id.* (citing *Brooks*, 323 S.W.3d at 899 n.13).

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

### B. Discussion

White only challenges the jury's affirmative finding that he used his automobile as a deadly weapon during the course of intentionally fleeing from arrest or detention in a motor vehicle, as alleged in the indictment.

To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon, *see* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2011); (2)

6

the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained, *Ex parte Jones,* 957 S.W.2d 849, 851 (Tex. Crim. App. 1997); and (3) other people were put in actual danger, *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc). A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Id.* Specific intent to use a motor vehicle as a deadly weapon is not required. *Id.*

White admits that the evidence shows that he was not alone on the roadway and was speeding at different points during the chase. However, White argues that because no collisions or near-collisions with other motorists took place, there was no evidence of "actual danger or a showing that the manner of the vehicles use is capable of causing death or serious bodily injury." We disagree.

The jury watched video footage of the pursuit from Officers Cadriel and Moran's respective viewpoints.[3] Officers Cadriel and Moran testified that White drove at speeds upwards of 90 miles per hour. During the pursuit, Officer Cadriel testified that White drove on the wrong side of traffic for "quite a distance" before returning to the correct lane. Furthermore, Officer Cadriel testified that White "blew through" a stop sign after White's car "fishtailed." Aside from labeling the pursuit a "dangerous" one, Officer Moran testified that at one point, he was "scared" because he was concerned that he was going to lose control of his own vehicle and injure another motorist or himself.

After reviewing the evidence in the light most favorable to the affirmative finding, we conclude that any rational trier of fact could have found beyond a reasonable doubt

---

[3] State's Exhibit 1 and 2 (the dashboard camera videos) were not included in the record on appeal.

that White used his automobile as a deadly weapon during the course of intentionally fleeing from arrest or detention in a motor vehicle.

We overrule White's second issue.

## IV.  CONCLUSION

The trial court's judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
25th day of April, 2013.