

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00150-CR

CHARLES ORIN LEE NASH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2128851

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

In December 2021, the State indicted Charles Orin Lee Nash for aggravated robbery with a deadly weapon, specifically, an "imitation handgun capable of propelling a projectile." Nash entered an open plea of guilty and signed a written judicial confession to the lesser-included offense of robbery.[1] The trial court found that the evidence was sufficient to sustain Nash's guilty plea to robbery but deferred a finding of whether he used a deadly weapon during the commission of the robbery. Pursuant to an agreement between the parties, on September 30, 2022, the trial court heard evidence regarding Nash's use of a deadly weapon, finding that he had, in fact, used or exhibited a deadly weapon during the commission of the charged offense. The trial court sentenced Nash to twenty years' confinement in prison. Nash appeals, arguing that the evidence was insufficient to support the trial court's finding that he used or exhibited a deadly weapon during the commission of the robbery.

The State did not file a brief in response to Nash's appeal. Instead, it provided the court with a letter response, directing us to our memorandum opinion in *Clark v. State*, No. 06-13-00156-CR, 2014 WL 2152005 (Tex. App.—Texarkana May 21, 2014, no pet.) (mem. op, not designated for publication). Based on *Clark*, the State maintains that Nash's guilty plea and judicial confession were sufficient, by themselves, to support the deadly weapon finding.[2] We disagree.

---

[1]The trial court's certification of Nash's right of appeal states that this "is not a plea-bargain case, and the defendant has the right of appeal."

[2]In its one-page letter, the State posited, in the alternative, that there was sufficient evidence to support the trial court's finding that Nash exhibited or used a deadly weapon during the robbery.

In *Clark*, the appellant pled guilty to aggravated robbery *with a deadly weapon*. Here, Nash pled guilty and judicially confessed to the lesser-included offense of robbery and asked the trial court to determine whether there was sufficient evidence to make an affirmative finding of a deadly weapon.[3] After hearing testimony and arguments of counsel, the trial court answered that question in the affirmative. Despite the State's assertion to the contrary and due to the circumstances in this case, this Court must address Nash's legal sufficiency challenge as it relates to the trial court's finding that Nash used or exhibited a deadly weapon during the commission of the robbery.

## I. Evidence

Stephani Foster, a cashier at Love's Travel Stop (Love's) in Sulphur Springs, testified that, on December 3, 2021, the store was very busy during her shift.[4] Although there were several people in the store, Foster said that one individual, who was later determined to be Nash, made her "feel uncomfortable" by continually pulling his sweatshirt over his face. Foster remembered telling her co-worker that she did not feel comfortable waiting on him. About thirty

---

[3]Notably, in *Clark*, this Court held, "A written judicial confession that a deadly weapon was used or exhibited is sufficient to support a deadly weapon finding, regardless of whether additional evidence was presented at trial." *Clark*, 2014 WL 2152005, at *2 (citing *Keller v. State*, 125 S.W.3d 600, 605–06 (Tex. App.—Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted*, 146 S.W.3d 677 (Tex. Crim. App. 2004) (per curiam)); *see also Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009).

But, in this case, Nash's judicial confession stated, in part,

Understanding all of my foregoing rights, I wish to waive these rights and enter a plea of guilty in this case to the allegation in the indictment alleging the commission of the offense of Robbery. *However, the plea of guilty does not include the allegation that a deadly weapon was used or exhibited during the commission of the Robbery.* I understand that the finding of a deadly weapon is an issue presented to the Court for its consideration and ultimate decision. It is a negotiated part of this plea agreement that this specific issue of a "Deadly Weapon Finding" is being left 'open' for the Court to decide after reviewing all the evidence and testimony presented.

(Emphasis added).

3

seconds later, while Foster was approaching her register, Nash pointed a gun at her. Foster said that she did not understand what was happening and that she "just knew that he had the gun, and [she] didn't know what he was going to do with it." Nash told Foster to give him a box of cigarettes. Foster complied with his request and then walked backwards to get away from him. Immediately after he got the cigarettes, Nash "made a run for it," at which time Foster "just lost it."[5] The State showed Foster a photograph of a gun, which she identified as the gun Nash had "brandished" or "pointed at [her]."

After the incident, Foster said she became very wary of customers who exhibited what she perceived to be odd behavior. At times, Foster would ask the manager to relieve her of her duties until such customers left the store. In Foster's opinion, Nash "came into that store, he had a plan, and that's what he did." She continued, "He wanted to do what he wanted to do that day and get what he wanted to get, and that was it."

On cross-examination, Foster acknowledged that there was a Plexiglass shield at her register and that it separated her from Nash. In addition, Foster conceded that the barrier would have prevented Nash from hitting or throwing the gun at her. Yet, she also stated that the barrier could be knocked over if someone was intent on doing so. Moreover, even considering the existence of the Plexiglass barrier, Foster believed that, if Nash had pulled the trigger, he could have shot her. Foster also said that it would have taken "[s]econds" for Nash to go around the

---

[4]Foster worked from 7:00 a.m. to 3:00 p.m.

[5]The trial court watched a security video recording taken in the store. The court describes Foster's reaction to Nash as "she nearly ha[d] a heart attack."

4

counter had he wanted to do so. It was not until after the incident occurred that Foster learned that Nash had been carrying a BB gun and not a handgun.

Detective Sergeant Jason Reneau testified that law enforcement recovered a BB gun during the investigation of the robbery at Love's. At trial, the State admitted the gun into evidence without objection from Nash. Reneau stated that the gun resembled a Glock firearm in that it had the "Glock emblems," a model number, and "a serial number twice, once on the receiver, traditional to any Glock." When asked whether the weapon felt like "a little plastic BB gun," Reneau stated, "This has weight to it just like a traditional Glock would have, a polymer frame with a metal slide." According to Reneau, the gun "looks, feels and functions just like a regular Glock."[6] Using a 500-page ream of paper and a stack of paper towels, Reneau shot the gun outdoors to determine if it was in working order. In finding that it was, Reneau said that the ammunition "penetrated [the ream of paper] to the last deformity on the back" and that it penetrated the paper towel stack. Based on his training and experience, Reneau opined that the BB gun was capable of causing serious bodily injury "if it was shot in soft tissue" and that it could permanently damage a person's eye. Lastly, Reneau explained that a person could use the gun to "club" or "pistol whip" another person and that could also cause serious bodily injury.

According to Reneau, there were no BBs or $CO_2$ cartridges recovered at the time the BB gun was recovered. On cross-examination, Reneau conceded that, absent a $CO_2$ cartridge or a BB, the gun would not be capable of causing serious bodily injury.

[6]The trial court was provided the gun for its inspection.

After considering the testimony, reviewing security camera recordings, and hearing arguments of counsel, the trial court found Nash guilty of aggravated robbery with a deadly weapon. This appeal followed.

## II. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational [trier of fact] could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the [fact-finder] 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

In drawing reasonable inferences, the trier of fact "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). Although a fact-finder may draw reasonable inferences, those inferences must be supported by the evidence. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). The fact-finder is not permitted to

base his conclusions on mere speculation or on factually unsupported inferences or presumptions. *See id.* "[E]vidence that is so weak that it creates only a suspicion" of a fact is no more than a modicum and is legally insufficient. *McKay v. State*, 474 S.W.3d 266, 270 (Tex. Crim. App. 2015).

The trier of fact is the sole judge of the credibility of the witnesses and the weight given to the evidence. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a [fact-finder]'s decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

## II. Discussion

In either a bench trial or a jury trial, legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Matlock v. State*, 20 S.W.3d 57, 61 (Tex. App.—Texarkana 2000, pet. ref'd). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which [the defendant] was tried." *Id.*

In this case, the indictment alleged that Nash committed aggravated robbery and that, during the commission of the robbery, he "use[d] or exhibit[ed] a deadly weapon, to wit: an imitation handgun capable of propelling a projectile."

A deadly weapon finding requires evidence that

(1) the object meets the statutory definition of a dangerous weapon, TEX. PENAL CODE [ANN.] § 1.07(a)(17)(B); (2) the deadly weapon was used or exhibited 'during the transaction from which' the felony conviction was obtained, *Ex parte Jones*, 957 S.W.2d 849, 851 (Tex. Crim. App. 1997); and (3) that other people

were put in actual danger. *Cates* [*v. State*], 102 S.W.3d [735,] 738 [(Tex. Crim. App. 2003)].

*Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Firearms are per se deadly weapons unless they are used in such a manner that "it is reasonably apparent that death or serious bodily injury could not result." *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g) (en banc) (concerning a shotgun); *see Bell v. State*, 501 S.W.2d 137, 138 (Tex. Crim. App. 1973) (concerning a pistol). A BB or pellet gun is not a "firearm" within the meaning of the Texas Penal Code and is deemed not to be a deadly weapon per se. *See Daughtery v. State*, 62 S.W.3d 913, 917 (Tex. App.—Eastland 2001, pet. ref'd). But a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B).[7]

Stated simply, the gravamen of Nash's complaint is that the gun was not loaded at the time of the robbery and, thus, could not have been used or exhibited as a deadly weapon at the time of the robbery. Consequently, he argues, the trial court erred when it made an affirmative finding of a deadly weapon.

In *Adame v. State*, 69 S.W.3d 581, 581 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals determined that the evidence of Adame's use of a BB gun during a convenience store robbery was sufficient to support the jury's deadly weapon finding because (1) the store clerk testified that she feared for her life when the defendant pointed the weapon at her and (2) a police investigator testified that Adame's BB gun "could cause serious bodily injury if

---

[7]For example, an automobile, although not designed for use as a deadly weapon, may be used in such a manner that it becomes a deadly weapon. *Noyola v. State*, 25 S.W.3d 18, 20 (Tex. App.—El Paso 1999, no pet.).

it were pointed and fired at someone." *Id.* In so ruling, the Texas Court of Criminal Appeals rejected Adame's argument that the State failed to prove that the BB gun was loaded. *Id.* at 582. It further found that, *whether a BB gun is loaded is not significant*; instead, what is significant is whether there is evidence presented that the BB gun is capable of causing serious bodily injury. *Id.* The court reiterated, "With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding."[8] *Id.*; *see Williams v. State*, 240 S.W.3d 293, 299 (Tex. App.—Austin 2007, pet. ref'd).

Nash argues that this case differs from *Adame* because, here, the trial court stated that it was plausible that the gun had been unloaded and was used only for the sake of appearances, but it also stated that it was just as plausible and reasonable to infer that the gun was loaded based on the manner in which it was used. Nash then concludes, "However, in considering all of these hypotheticals, the court ignored the simplest conclusion suggested by the evidence: the gun was never loaded."

---

[8]The court explained,

> [I]n cases like this, where during a convenience store robbery a defendant threatens serious bodily injury to the convenience store clerk by pointing a BB gun at her, a jury may rationally infer that the BB gun is loaded. *See Delgado v. State*, 986 S.W.2d 306, 308 (Tex. App.—Austin 1999, no pet.) (jury could rationally infer that defendant's pistol was loaded from evidence that defendant brandished it, pointed it at robbery victims and threatened to kill them). It is reasonable to infer that defendants use loaded guns to facilitate convenience store robberies. It is not necessary, however, to place an additional evidentiary burden on the State to affirmatively prove that a BB gun, which is not a deadly weapon per se, was loaded at the time of the commission of the offense. Rather, in proving use of a deadly weapon other than a deadly weapon per se, the State need show only that the weapon used was capable of causing serious bodily injury or death in its use or intended use.

*Adame*, 69 S.W.3d at 582.

Here, Foster testified that Nash pointed the weapon directly at her and that she had no choice but to comply with his demand for cigarettes. Further, even despite the Plexiglass barrier between the two of them, Foster explained that, if Nash had pulled the trigger, the Plexiglass would not have prevented her from being shot. Moreover, after actually firing the gun, Reneau opined that the BB gun was capable of causing serious bodily injury.

Lastly, we address Nash's contention that the weapon[9] must have been empty when he pointed it at Foster because of what happened when he subsequently pointed it at the store manager. Nash's interaction with the store manager was shown at trial in surveillance recordings that were not admitted into evidence, and they were not provided to this Court for its review. Yet, the trial court's record shows that the parties and the trial court considered the recordings as evidence.[10] According to the arguments of counsel and the trial court's findings, the convenience store's surveillance recording showed that the store manager attempted to follow Nash but the manager stopped after Nash threatened him, pointed the weapon at him, and then pulled the trigger. The weapon did not discharge a projectile but instead made a "click." According to Nash, that established that the weapon was unloaded when he was fleeing the store and, therefore, must have been unloaded when he pointed it at Foster. We disagree. After that

---

[9]We now refer to it as "the weapon" because, as discussed above, the evidence supported the conclusion that neither Foster nor the store manager knew that it was actually a BB gun as the robbery was underway and because the evidence at the hearing supported a finding that it was capable of causing serious bodily injury.

[10]There are two circumstances in which evidence that was not admitted may be treated as if it had been formally admitted for purposes of appellate review: (1) the record clearly reflects that a jury saw, heard, or felt the unobjected-to item; or (2) the record clearly shows that the trial court and the parties treated the evidence as admitted, and there is nothing about the evidence itself that requires discretion or authentication. *Cornish v. State*, 848 S.W.2d 144, 144–45 (Tex. Crim. App. 1993) ("[E]vidence which, although not formally introduced is nevertheless treated by the trial court and the parties as if it had been, may be considered on appeal as if admitted").

Here, the recordings were clearly considered evidence by the trial court and the parties, and neither party challenged at trial, nor challenges on appeal, the contents of the recordings.

10

incident occurred, the manager said that he believed the weapon had misfired, which, as the trial court found, supported an inference that the weapon was loaded at the time of the robbery.

Much like Foster and the store manager, the fact-finder (here, the trial court) could rationally infer that the weapon was loaded *from the very manner in which Nash used it*. In the succinct words of the Texas Court of Criminal Appeals: "It is reasonable to infer that defendants use loaded guns to facilitate convenience store robberies." *Adame*, 69 S.W.3d at 582.

Based on the foregoing, we cannot say that the trial court abused its discretion when it found that the BB gun, in the manner of its use or intended use, was capable of causing death or serious bodily injury. Accordingly, we find that the trial court's deadly weapon finding was supported by sufficient evidence.

We overrule Nash's sole point of error.

## III.    Conclusion

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:     January 25, 2023
Date Decided:       March 6, 2023

Do Not Publish

11