ACCEPTED
12-16-00225-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/31/2017 10:31 AM
Pam Estes
CLERK

## CAUSE NO. 12-16-00225-CR

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
7/31/2017 10:31:33 AM
PAM ESTES
Clerk

GREGORY DEWAYNE TENNYSON,

APPELLANT

V.

THE STATE OF TEXAS,

APPELLEE

## STATE'S REPLY TO APPELLANT'S BRIEF

**ORAL ARGUMENT NOT REQUESTED**

D. Matt Bingham
Criminal District Attorney
Smith County, Texas

Sarah K. Bales Mikkelsen
Assistant Criminal District Attorney
Bar I.D. No. 24087139
Smith County Courthouse
100 N. Broadway
Tyler, Texas 75702
ph: (903) 590-1720
fax: (903) 590-1719

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

REPLY TO APPELLANT'S POINTS OF ERROR. . . . . . . . . . . . . . . . . . . . .   3

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

COUNTERPOINT ONE: THE RECORD SUPPORTS THE TRIAL COURT'S
BATSON RULING BECAUSE TENNYSON FAILED TO REBUT THE STATE'S
RACE-NEUTRAL EXPLANATIONS FOR ITS PEREMPTORY STRIKES. . . . . . . . . . . .   7
    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
    APPLICABLE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

COUNTERPOINT TWO: AT TRIAL, THE STATE PRESENTED SUFFICIENT
EVIDENCE TO CONVINCE THE JURY BEYOND A REASONABLE DOUBT
THAT TENNYSON USED HIS VEHICLE AS A DEADLY WEAPON. . . . . . . . . . . . . .   16
    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
    APPLICABLE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19
    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

COUNTERPOINT THREE: IN THIS CASE, THERE WAS NO EVIDENCE
THAT TENNYSON REASONABLY BELIEVED THAT HIS ACTIONS WERE
IMMEDIATELY NECESSARY TO AVOID IMMINENT HARM. THEREFORE,
THE TRIAL COURT PROPERLY DENIED HIS REQUEST FOR A NECESSITY
INSTRUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23
    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24
    APPLICABLE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25
    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

COUNTERPOINT FOUR: EVEN IF THERE WAS A FACT QUESTION REGARDING THE LEGALITY OF TENNYSON'S TRAFFIC STOP, HE WAS NOT ENTITLED TO AN ARTICLE 38.23 INSTRUCTION BECAUSE THE AGGRAVATED ASSAULT EVIDENCE WAS NOT "OBTAINED IN VIOLATION OF THE LAW.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    APPLICABLE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

COUNTERPOINT FIVE: SALINAS V. STATE WAS DECIDED EIGHT MONTHS AFTER TENNYSON'S TRIAL ENDED. BECAUSE ITS HOLDING APPLIES PROSPECTIVELY, TENNYSON IS NOT ENTITLED TO A CONSOLIDATED COURT COST FEE MODIFICATION. . . . . . . . . . . . . . . . . . . . . . 37
    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    APPLICABLE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

# INDEX OF AUTHORITIES

**STATUTE/RULES**                                                                 **PAGE**

**Tex. Local Gov't Code (West 2015)**
§ 133.102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 41

**Tex. Penal Code Ann. (West 2015)**
art. 22.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
art. 35.261. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
art. 38.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
§ 1.07(a)(17)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19
§ 9.22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

**Tex. R. App. P.**
9.4 (i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

**FEDERAL CASES**                                                                  **PAGE**

*Batson v. Kentucky*, 476 U.S. 79
(1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Griffith v. Kentucky*, 479 U.S. 314
(1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Jackson v. Virginia*, 443 U.S. 307
(1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stovall v. Denno*, 388 U.S. 293
(1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**STATE CASES**                                                           **PAGE**

*Adanandus v. State*, 866 S.W.2d 210
  (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Bowen v. State*, 162 S.W.3d 226
  (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Camacho v. State*, 864 S.W.2d 524
  (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

*Cates v. State*, 102 S.W.3d 735
  (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Cooper v. State*, 956 S.W.2d 95
  (Tex. App.—Tyler 1997, pet. ref'd). . . . . . . . . . . . . . . . . . . . . 35, 36

*Davis v. State*, 2003 Tex. App. LEXIS 1636
  (Tex. App.—Dallas Feb. 21, 2003, no pet.)(not designated for
  publication). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Dewberry v. State*, 4 S.W.3d 735
  (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Dorsey v. State*, 940 S.W.2d 169
  (Tex. App.—Dallas, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . .   14

*Drichas v. State*, 152 S.W.3d 630
  (Tex. App.—Texarkana 2004), *rev'd*, 175 S.W.3d 795 (Tex. Crim.
  App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Drichas v. State*, 175 S.W.3d 795
  (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

**STATE CASES**                                                                                          **PAGE**

*Ex parte Jones*, 957 S.W.2d 849
(Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Ford v. State*, 112 S.W.3d 788
(Tex. App.—Houston [14th Dist.] 2003, no pet.). . . . . . . . . . . . . .   31

*Gardner v. State*, 306 S.W.3d 274
(Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Gibson v. State*, 144 S.W.3d 530
(Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Graham v. State*, 566 S.W.2d 941
(Tex. Crim. App. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Granger v. State*, 3 S.W.3d 36
(Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 32

*Grant v. State*, 325 S.W.3d 655
(Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Guzman v. State*, 85 S.W.3d 242
(Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Harris v. State*, 827 S.W.2d 949
(Tex. Crim. App. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Hayes v. State*, 728 S.W.2d 804
(Tex. Crim. App. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

| STATE CASES | PAGE |
|---|---|

*Hooper v. State*, 214 S.W.3d 9
  (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Howell v. State*, 175 S.W.3d 786
  (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

*Ivatury v. State*, 792 S.W.2d 845
  (Tex. App.—Dallas 1990, pet. ref'd). . . . . . . . . . . . . . . . . . . . . .   13

*Jasper v. State*, 61 S.W.3d 413
  (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

*Johnson v. State*, 405 S.W.3d 350
  (Tex. App.—Tyler 2013, no pet.).. . . . . . . . . . . . . . . . . . . . . . . .   38

*Juarez v. State*, 308 S.W.3d 398
  (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Kunkle v. State*, 771 S.W.2d 435
  (Tex. Crim. App. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Madden v. State*, 242 S.W.3d 504
  (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

*Martinez v. State*, 91 S.W.3d 331
  (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

*Middleton v. State*, 187 S.W.3d 134
  (Tex. App.—Texarkana 2006, no pet.). . . . . . . . . . . . . . . . . . . . .   12

**STATE CASES**                                                         **PAGE**

*Miller v. State,* 815 S.W.2d 582
(Tex. Crim. App. 1991) (op. on reh'g) . . . . . . . . . . . . . . . . . . . . . . . 25

*Moreno v. State,* 755 S.W.2d 866
(Tex. Crim. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Neal v. State,* 2016 Tex. App. LEXIS 3793
(Tex. App.—Tyler Apr. 13, 2016) (mem. op., not designated for
publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Ngo v. State,* 175 S.W.3d 738
(Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Salinas v. State,* 2017 Tex. Crim. App. LEXIS 284
(Tex. Crim. App. Mar. 8, 2017) (designated for publication) . . . . . . *passim*

*Sanders v. State,* 707 S.W.2d 78
(Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Sierra v. State,* 280 S.W.3d 250
(Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Victor v. State,* 995 S.W.2d 216
(Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) . . . . . . . . . . . . . 11

*Whitsey v. State,* 796 S.W.2d 707
(Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Williams v. State,* 332 S.W.3d 694
(Tex. App.—Amarillo 2011, pet. denied) . . . . . . . . . . . . . . . . . . . 38

**CAUSE NO. 12-16-00225-CR**

---

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

---

GREGORY DEWAYNE TENNYSON,

APPELLANT

V.

THE STATE OF TEXAS,

APPELLEE

---

**STATE'S REPLY TO APPELLANT'S BRIEF**

---

The State of Texas respectfully urges this Court to overrule appellant Gregory Tennyson's alleged errors and affirm the judgment of the trial court.

STATEMENT OF THE CASE

On January 14, 2016, Gregory Dewayne Tennyson was indicted for aggravated assault on a peace officer in Cause No. 241-0030-16, filed in the 241st District Court, Smith County, Texas. Tex. Penal Code Ann. art. 22.02 (West 2015); (C.R. at 1). Tennyson, who was represented by appointed counsel, Clifton Roberson, pleaded not guilty. (C.R. at 44.) On June 29, 2016,

1

Tennyson's jury convicted and sentenced him to confinement for life in the Texas Department of Criminal Justice – Institutional Division, no fine. (C.R. at 44.)

On February 23, 2017, James Huggler, Jr. was appointed to represent Tennyson on appeal. He filed a brief on July 7, 2017, and the State's response is due by August 7, 2017.

## STATEMENT OF FACTS

On October 25, 2015, Deputy Clayton Taylor pulled over Gregory Tennyson for an unreadable license plate. (3 R.R. at 29.) After running his driver's license information, Deputy Taylor learned that Tennyson had an outstanding warrant and asked him to step out of the vehicle. (3 R.R. at 35.) Instead, he fled, with the patrol car following closely behind. (3 R.R. at 35-36.) While both vehicles were stopped at a red light, Tennyson shifted into reverse and rammed Deputy Taylor's patrol car, then speeded away on wet roads for several miles. (3 R.R. at 36, 59.) Ultimately, he was arrested in Mineola after his SUV finally came to a stop when it plowed into multiple law enforcement vehicles. (3 R.R. at 48.)

During voir dire before Tennyson's jury trial, he accused the State of improperly striking three potential jurors because they were black. (2 R.R. at 223-24.) After the trial court found that Tennyson made a *prima facie* showing of racial discrimination, the State provided multiple explanations for each of the challenged strikes. (2 R.R. at 224-33.) The trial court found the State's reasons to be race-neutral and overruled the *Batson* motion. (2 R.R. at 236.)

Following Tennyson's conviction, the trial court ordered Tennyson to pay $229 in court costs, including a $133 consolidated court cost fee. (1 C.R. at 80.) Because he was unable to pay, the court ordered monthly withdrawals from Tennyson's Inmate Trust Account (1 C.R. at 83.)

### REPLY TO APPELLANT'S POINTS OF ERROR

**COUNTERPOINT ONE:** THE RECORD SUPPORTS THE TRIAL COURT'S *BATSON* RULING BECAUSE TENNYSON FAILED TO REBUT THE STATE'S RACE-NEUTRAL EXPLANATIONS FOR ITS PEREMPTORY STRIKES.

**COUNTERPOINT TWO:** AT TRIAL, THE STATE PRESENTED SUFFICIENT EVIDENCE TO CONVINCE A RATIONAL JURY BEYOND A REASONABLE DOUBT THAT TENNYSON USED HIS VEHICLE AS A DEADLY WEAPON.

**COUNTERPOINT THREE:** IN THIS CASE, THERE WAS NO EVIDENCE THAT TENNYSON REASONABLY BELIEVED THAT HIS ACTIONS WERE IMMEDIATELY NECESSARY TO AVOID IMMINENT HARM. THEREFORE, THE TRIAL COURT PROPERLY DENIED HIS REQUEST FOR A NECESSITY INSTRUCTION.

**COUNTERPOINT FOUR:** EVEN IF THERE WAS A FACT QUESTION REGARDING THE LEGALITY OF TENNYSON'S TRAFFIC STOP, HE WAS NOT ENTITLED TO AN ARTICLE 38.23 INSTRUCTION BECAUSE THE AGGRAVATED ASSAULT EVIDENCE WAS NOT "OBTAINED IN VIOLATION OF THE LAW."

**COUNTERPOINT FIVE:** *SALINAS V. STATE* WAS DECIDED EIGHT MONTHS AFTER TENNYSON'S TRIAL ENDED. BECAUSE ITS HOLDING APPLIES PROSPECTIVELY, TENNYSON IS NOT ENTITLED TO A CONSOLIDATED COURT COST FEE MODIFICATION.

## SUMMARY OF ARGUMENT

On appeal, Tennyson claims in his first issue that the State improperly struck three venirepersons on the basis of race. After Tennyson lodged a *Batson* challenge during jury selection, the prosecutor's stated reasons for the challenged strikes included the prospective jurors' (1) occupations and education; (2) preference for rehabilitation over punishment; (3) previous performance on criminal juries; and (4) family criminal history. Tennyson claims that the prosecutor's failure to delve deeper into these concerns proves that the State's explanations were pretextual. However, this

4

argument implies that the State is responsible for proving non-discrimination in a *Batson* challenge, when the burden of persuasion actually remains with the defendant to establish purposeful discrimination. Further, appellate courts in other cases have found each of the State's explanations to be valid, race-neutral reasons to exercise peremptory strikes.

In his second issue, Tennyson argues that there was insufficient evidence to support the jury's deadly weapon finding. In fact, a rational jury could have easily found that the way Tennyson drove his SUV was capable of causing serious injury or death, because he slammed into an occupied vehicle while the driver's seatbelt was not fastened. And during the ensuing chase, Tennyson drove at dangerously high speeds on wet roads for several miles, only stopping when he collided with law enforcement vehicles. As a result, the jury was convinced beyond a reasonable doubt that Tennyson's vehicle, in the manner that it was driven, was a deadly weapon.

In his third issue, Tennyson complains about the trial court's refusal to include his requested necessity instruction in the jury charge. To be entitled to a necessity instruction, he must have satisfied the confession and avoidance doctrine by admitting to both the act *and* requisite mental state. But at trial,

Tennyson testified that his collision with the deputy's car was accidental. Consequently, the confession and avoidance doctrine was not satisfied, and the trial court properly denied Tennyson's requested instruction. Because there was no charge error, there is no need for a harm analysis.

In his fourth issue, Tennyson complains again about charge error. Specifically, he contends that he was entitled to an art. 38.23 probable cause instruction because his traffic stop was illegal. But even if the Court assumes that the stop was illegal, evidence of the aggravated assault on Deputy Taylor would still be admissible because a problematic stop cannot taint evidence not yet in existence. Therefore, Tennyson was not entitled to a probable cause instruction, and the trial court did not err in denying the request. Again, without charge error, a harm analysis is unnecessary.

Finally, Tennyson argues in his fifth issue that his court costs should be reduced by $13.07, based on the Court of Criminal Appeals' recent holding in *Salinas v. State* that two portions of the Consolidated Court Cost Fee are unconstitutional. But as he admits in his brief, Tennyson is not entitled to a fee reduction because *Salinas* does not apply retroactively.

**COUNTERPOINT ONE:** THE RECORD SUPPORTS THE TRIAL COURT'S *BATSON* RULING BECAUSE TENNYSON FAILED TO REBUT THE STATE'S RACE-NEUTRAL EXPLANATIONS FOR ITS PEREMPTORY STRIKES.

First, Tennyson complains that the trial court erred when it overruled his *Batson* motion. (Appellant Br. at 3.) However, the State offered multiple race-neutral explanations for each of the challenged strikes, and Tennyson failed to prove that the reasons were mere pretext for purposeful racial discrimination. Therefore, the trial court's ruling was not clearly erroneous.

## A. STANDARD OF REVIEW

*1. Appellate courts view a trial court's ruling on a Batson motion in the light most favorable to the ruling, and it will not be reversed unless it is clearly erroneous.*

We have held that appellate review of a *Batson* claim shall be conducted by an examination of the record in the light most favorable to the ruling of the trial court. The standard of review is whether the ruling of the trial court was or was not "clearly erroneous." If supported by the record, including the voir dire, the prosecutor's explanation of his use of a peremptory challenge, the rebuttal by appellant and impeaching evidence, the decision of the trial court will not be clearly erroneous.

*Camacho v. State*, 864 S.W.2d 524, 528 (Tex. Crim. App. 1993).

To determine whether a trial court's *Batson* ruling is 'clearly erroneous,' appellate courts examine the record to see whether the ruling leaves them

with the 'definite and firm conviction that a mistake has been committed.' *Guzman v. State,* 85 S.W.3d 242, 254 (Tex. Crim. App. 2002). Whether the prosecutor's facially race-neutral reasons are pretext for purposeful racial discrimination is solely a question of fact; there is no issue of law. *Gibson v. State,* 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). Because the trial court is in the best position to make that credibility determination, the ruling is accorded great deference. *Jasper v. State,* 61 S.W.3d 413, 421-422 (Tex. Crim. App. 2001).

When the State excludes even one venireperson from the jury panel for racial reasons, it violates due process and invalidates the entire jury selection process. *Whitsey v. State,* 796 S.W.2d 707, 716 (Tex. Crim. App. 1989). Therefore, an appellant is entitled to a new trial when an appellate court finds that the trial court's ruling on his *Batson* challenge was clearly erroneous. *Ibid*.

8

**B.** **APPLICABLE LAW**

*1. A prosecutor violates the Equal Protection Clause of the Eighth Amendment when he discriminates against potential jurors based on race.*

While a prosecutor may ordinarily exercise peremptory strikes for any reason related to his view concerning the outcome of the case, the Equal Protection Clause forbids him from challenging potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).

*2. During a Batson challenge, the defendant has the burden to establish purposeful discrimination.*

**Peremptory Challenges Based on Race Prohibited.**

(a)    After the parties have delivered their lists to the clerk under art. 35.26 of this code and before the court has impaneled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral

9

explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b)    If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

Tex. Code Crim. Proc. Ann. art. 35.261 (West 2015).

## C.    ARGUMENT

*1. A prospective juror's belief that rehabilitation is the primary goal of punishment is a race-neutral reason to use a peremptory strike.*

During voir dire, after both parties exercised their strikes, but before the jury was sworn, Tennyson objected to the prosecution striking panel members Sandra Pettigrew (No. 14), Arthur Franklin (No. 15), and Gerneshia Benton (No. 30) pursuant to *Batson.* (2 R.R. at 223.) Specifically, Tennyson claimed that the State used peremptory strikes on Pettigrew, Franklin, and Benton because, like him, they were black. (2 R.R. at 223-24.) After finding that Tennyson had established a *prima facie* showing of racial discrimination, the trial court directed the State to explain its peremptory strikes. (2 R.R. at 224-25.)

The prosecutor explained that one of the reasons that he struck Pettigrew, Franklin, and Benton was that they did not consider punishment to

10

be a higher priority than rehabilitation with regards to sentencing considerations. (2 R.R. at 226-31.) Previously, appellate courts have held that a prospective juror's belief that rehabilitation is a less important goal than punishment is a race-neutral reason to use a peremptory strike. *Victor v. State*, 995 S.W.2d 216, 222 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see also Adanandus v. State*, 866 S.W.2d 210, 224-25 (Tex. Crim. App. 1993).

Additionally, the State was consistent in its strikes, because the prosecutor exercised almost every strike on prospective jurors who answered likewise. (2 R.R. at 78.) In fact, the State used only one out of its ten peremptory strikes on a venireperson who agreed with the premise that punishment is more important than rehabilitation. (2 R.R. at 78.) And that venireperson, No. 17, previously served on a jury in a case that ended in a mistrial. (2 R.R. at 158.) Presumably, the State struck him out of fear that he held out for an acquittal in that other case. Whatever the State's reason was for striking No. 17, Tennyson has not met his burden to prove that the rehabilitation-over-punishment reason was merely a pretext for racial discrimination.

*2. A prospective juror's educational background and employment are race-neutral reasons to use a peremptory strike.*

Courts have previously held that when the State strikes a prospective juror based on that person's type of employment and that the State has been unsuccessful with that type of worker, the reason is a race-neutral explanation for exercising the peremptory challenge. *Middleton v. State*, 187 S.W.3d 134, 142 (Tex. App.—Texarkana 2006, no pet.). During Tennyson's *Batson* challenge, the prosecutor also explained that he struck Pettigrew, Franklin, and Benton because they worked in unskilled labor and had limited education. (2 R.R. at 225-32.) In his experience, venirepersons who fell in these categories tended to make defendant-sympathetic jurors. (2 R.R. at 225.)

Specifically, Gerneshia Benton (No. 30) worked as a unit technician at Trinity Mother Frances Hospital, which the State believed involved direct patient care. (Defense Ex. 3; 2 R.R. at 232.) In conjunction with her preference for rehabilitation over punishment, the prosecutor had specific concerns that Benton would be unusually sympathetic to people in dire circumstances, like criminal defendants. (2 R.R. at 232.) In response, Tennyson did not offer any proof that the State's explanation was a pretext for racial

discrimination. Consequently, this Court has no basis for finding that the trial court's ruling was clearly erroneous, and Tennyson's first ground should be overruled as to Benton.

>    3. *A prospective juror's previous performance on a criminal jury is a race-neutral reason to use a peremptory strike.*

A bad record during prior jury service "would logically induce any prosecutor to exercise a peremptory challenge regardless of the ethnic background of the named panel members." *Ivatury v. State,* 792 S.W.2d 845, 848 (Tex. App.—Dallas 1990, pet. ref'd). During jury selection, the prosecutor learned that Arthur Franklin (No. 15) (1) preferred rehabilitation to punishment; (2) worked in unskilled labor; and (3) previously served on a Smith County jury where the defendant was convicted for possession of a controlled substance. (2 R.R. at 229-31.) Although the defendant in that other case had prior felony convictions, Franklin and his fellow jurors assessed a lenient sentence. (2 R.R. at 229-31.)

Combined with his employment status and preference for rehabilitation over punishment, the prosecutor understandably believed that Franklin was unlikely to assess a stiff punishment against Tennyson and struck him from

13

the venire. After the State provided three race-neutral explanations for striking Franklin, Tennyson failed to rebut the explanations or provide any other evidence of racial discrimination. As a result, the trial court properly overruled Tennyson's *Batson* challenge, and his first ground should be overruled with respect to Franklin.

### 4. *Family history with the criminal justice system is a race-neutral reason to use a peremptory strike.*

In other cases, appellate courts have found that using peremptory strikes on prospective jurors whose relatives who have been convicted or charged with a criminal offense is legitimate, logical, and race-neutral. *Harris v. State*, 827 S.W.2d 949, 955 (Tex. Crim. App. 1992); *see also Dorsey v. State*, 940 S.W.2d 169, 175 (Tex. App.—Dallas, pet. ref'd). In this case, the prosecutor was already aware of Sandra Pettigrew's (No. 14) employment status and preference for probation over punishment when he learned that his office had prosecuted at least three of her relatives. (2 R.R. at 175.) In fact, one of Pettigrew's relatives was found guilty of murder, and two others were convicted of felonies in the very same courtroom where Tennyson's trial would take place. (2 R.R. at 175, 226.) Naturally, the

14

prosecutor suspected that she was biased against the State and decided to strike her from the pool. (2 R.R. at 225.) Because the trial court's finding that the State's explanations for this strike were race-neutral was not clearly erroneous, Tennyson's first ground should be overruled with respect to Pettigrew.

> 5. *The record supports the trial court's ruling, and Tennyson has not demonstrated that the State purposefully discriminated against Pettigrew, Franklin, or Benton.*

On appeal, Tennyson implies that the State failed to meet its burden to prove non-discrimination because the prosecutor did not individually question Pettigrew, Franklin, or Benton about his concerns. (Appellant Br. at 13.) But in a *Batson* challenge, the State is actually only required to provide a race-neutral explanation for its strikes, while the burden of persuasion remains with the defendant to establish purposeful discrimination. Tex. Code Crim. Proc. Ann. art. 35.261 (West 2015). Here, Tennyson failed to (1) present any other evidence of racial discrimination; (2) demonstrate that the State failed to strike white venirepersons who were similarly situated to those that were struck; or

15

(3) otherwise rebut the prosecutor's race-neutral reasons for striking the prospective jurors. (2 R.R. at 227-36.)

When there is a "foundation in the record for the trial court's ruling that the explanation was not a pretext for discrimination," a trial court's ruling is not clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 660 (Tex. Crim. App. 2010). Consequently, even if there was some evidence at the *Batson* hearing that supports an inference of pretext, in viewing the record in the light most favorable to the trial court's ruling, the evidence firmly supports the trial court's decision. *See id.* at 659; Tex. Code Crim. Proc. Ann. art. 35.261 (West 2015). Consequently, Tennyson's claim, that the State improperly struck Sandra Pettigrew, Arthur Franklin, and Gerneshia Benton on the basis of race, should be overruled.

COUNTERPOINT TWO: AT TRIAL, THE STATE PRESENTED SUFFICIENT EVIDENCE TO CONVINCE A RATIONAL JURY BEYOND A REASONABLE DOUBT THAT TENNYSON USED HIS VEHICLE AS A DEADLY WEAPON.

In his second issue, Tennyson argues that the evidence is legally insufficient to support the deadly weapon element of the charged offense. But the jury heard evidence that after Tennyson slammed his SUV into an occupied vehicle, he speeded away on wet roads and crashed into multiple

16

vehicles. Consequently, there is legally sufficient evidence to support the jury's deadly weapon finding.

## A.    STANDARD OF REVIEW

1. *The standard of review is whether, after viewing the evidence in the light most favorable to the guilty verdict, any rational trier of fact could have found that the defendant used a deadly weapon beyond a reasonable doubt.*

The Supreme Court articulated the standard of review for legal sufficiency in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The legal sufficiency standard in Texas is the same as in *Jackson*. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). When examining the evidence for legal sufficiency, a reviewing court's role is not to become a thirteenth juror, and it may not reevaluate the weight and credibility of the record evidence or substitute its judgment for that of the jury. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

17

On appeal, a reviewing court must defer to the fact-finder's responsibility to (1) fairly resolve conflicts in testimony; (2) weigh the evidence; and (3) draw reasonable inferences. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Even without an eyewitness, the State may prove its case by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

> *2. For a deadly weapon finding, the State must prove that Tennyson's vehicle (1) satisfies the statutory definition; (2) was used during the crime; and (3) actually endangered someone.*

In a case involving a deadly weapon finding, the evidence is legally sufficient if three requirements are met. First, the object must satisfy the statutory definition of a dangerous weapon. Tex. Penal Code § 1.07(a)(17)(B) (West 2015). Second, the deadly weapon must have been used or exhibited "during the transaction from which" the felony conviction was obtained. *Ex parte Jones*, 957 S.W.2d 849, 851 (Tex. Crim. App. 1997). Finally, other people must have been put in actual danger. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).

**B.** **APPLICABLE LAW**

*1. A jury may find that a defendant's vehicle was used as a deadly weapon even without (1) actual injury; or (2) the defendant's specific intent.*

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 2015). For example, an automobile may be a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Additionally, a deadly weapon finding does not require that the defendant specifically intended to use his motor vehicle as a deadly weapon. *Ibid*. Further, § 1.07(a)(17)(B) does not require other motorists to be "in a zone of danger, take evasive action, or require the defendant to intentionally strike another vehicle in order to justify a deadly weapon finding." *Id*. at 799.

To determine whether a motor vehicle was used as a deadly weapon, a reviewing court first evaluates "the manner in which the defendant used the motor vehicle during the felony," taking into consideration whether appellant's driving was reckless or dangerous. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). Second, the court considers whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Ibid*.

19

**C.** **ARGUMENT**

*1. Tennyson's vehicle was a deadly weapon when it rammed into Deputy Taylor's patrol car.*

In 2003, the 5th Court of Appeals affirmed a deadly weapon finding in another case where the defendant, Charles Davis, rammed ram a patrol car while driving in reverse. *Davis v. State*, 2003 Tex. App. LEXIS 1636, *2-3 (Tex. App.—Dallas Feb. 21, 2003, no pet.) (not designated for publication). While unpublished cases do not have precedential value, they may still be persuasive, and the collisions in these two cases are nearly identical.

In *Davis*, Officers Valentine and O'Brien activated their patrol car's lights and sirens and followed the defendant as he turned onto a side street and stopped. *Id*. at *2. Before the officers exited the vehicle, Davis put his Chevrolet Monte Carlo into reverse, violently ramming its rear bumper into the front of the squad car. *Id*. at *3. Although neither officer was injured, the court nevertheless found the evidence sufficient for a rational jury to conclude that Officers Valentine and O'Brien were in danger of serious bodily injury. *Id*. at *12. Further, the evidence was also sufficient for the jury to have concluded that Davis *intended* to cause the officers serious bodily injury. *Ibid*.

20

Likewise, in this case, it does not matter that Deputy Taylor did not require medical treatment following Tennyson's aggravated assault. (3 R.R. at 88.) The jury watched video footage and heard testimony from Deputy Taylor that when Tennyson rammed into his patrol car, he had already removed his seatbelt and was physically jarred by the hard collision. (3 R.R. at 56, 88.) What's more, after the initial impact, Tennyson hit the gas in an effort to push the patrol car, so the jury likely concluded not only that Officer Taylor could have been seriously hurt, but also that it was Tennyson's goal to seriously injure him. (3 R.R. at 57.)

> 2. *Tennyson used his vehicle as a deadly weapon in his immediate flight following the aggravated assault, because his dangerous driving could have killed or seriously injured someone.*

Following the aggravated assault, Tennyson led the deputy on a dangerous high-speed chase. The circumstances of Tennyson's chase are similar to another case, in which David Drichas was convicted of evading detention and using his truck as a deadly vehicle. *Drichas v. State,* 152 S.W.3d 630, 633 (Tex. App.—Texarkana 2004), *rev'd,* 175 S.W.3d 795 (Tex. Crim. App. 2005). There, Drichas drove on the wrong side of the road, ran red lights, and fishtailed as he led officers on a high-speed chase. *Ibid*. The chase ended when

21

he turned into a mobile home park, jumped out of his still-moving truck, and fled. *Ibid*. The truck hit a van, sending the van crashing into a mobile home. *Ibid*. Although no one was injured, the jury nevertheless determined that Drichas had used his truck as a deadly weapon. *Ibid*.

On appeal, Drichas raised an evidentiary sufficiency claim, and the 6th Court of Appeals deleted the deadly weapon finding. *Id*. at 640. However, the Court of Criminal Appeals disagreed, finding that Drichas endangered the officers who chased him in a way that was "more than simply hypothetical; the danger was real, and the manner in which appellant drove his truck made it capable of causing death or serious bodily injury." *Drichas*, 175 S.W.3d at 798.

Here, it does not matter that Tennyson did not kill or seriously injure anyone. On wet roads, Tennyson drove at dangerously high speeds for several miles in a chase that only ended when he rammed into law enforcement vehicles, totaling one. (3 R.R. at 48, 59, 95.) Further, the jury saw video footage of Tennyson illegally passing another motorist using an interior turn lane. (3 R.R. at 60.) As with *Drichas*, the danger here was more than

hypothetical because Tennyson's car, as operated, was capable of causing death or serious bodily injury.

Through video footage and officer testimony, the State presented sufficient evidence for the jury to find that Tennyson's vehicle was used as a deadly weapon both in his aggravated assault against Deputy Taylor and during the immediate flight following the collision. Therefore, Tennyson's second point of error should be overruled.

COUNTERPOINT THREE: IN THIS CASE, THERE WAS NO EVIDENCE THAT TENNYSON REASONABLY BELIEVED THAT HIS ACTIONS WERE IMMEDIATELY NECESSARY TO AVOID IMMINENT HARM. THEREFORE, THE TRIAL COURT PROPERLY DENIED HIS REQUEST FOR A NECESSITY INSTRUCTION.

Although Tennyson testified at trial that his collision with Deputy Taylor was accidental, he nevertheless argues in his third issue that he was entitled to a necessity instruction. But a defendant who admits to committing the act but denies having the requisite culpable mental state is not entitled to a necessity instruction, so the trial court properly denied Tennyson's request.

**A. STANDARD OF REVIEW**

*1. When a trial court improperly denies a requested instruction, reversal is required unless the denial was harmless error.*

On appeal, the court reviews alleged charge error by considering (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). In cases where the evidence fails to raise a defensive issue, the trial court commits no error in refusing a requested instruction. *Kunkle v. State*, 771 S.W.2d 435, 444 (Tex. Crim. App. 1986).

When the trial court improperly refuses a requested instruction, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Ngo*, 175 S.W.3d at 743. Under *Almanza*, jury charge error requires reversal when the defendant has properly objected to the charge and the reviewing court finds "some harm" to his rights. *Ibid*. However, when the defendant either fails to object or affirmatively states that he has no objection to the charge, reversal is not required unless the error caused the defendant "egregious harm." *Id*. at 743-44.

24

**B.     APPLICABLE LAW**

> *1. A defendant is entitled to a jury instruction on every defensive issue raised by the evidence.*

A defendant has the right to an instruction on any defensive issue raised by the evidence, "whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence." *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). This rule is designed to ensure that the jury, not the judge, will decide the relative credibility of the evidence. *Miller v. State,* 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g). Further, a defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987).

**C.     ARGUMENT**

> *1. The defendant must admit to both the act and the applicable culpable mental state to be entitled to a necessity instruction.*

In his brief, Tennyson summarizes a case in which the defendant, Lydia Bowen, was entitled to a necessity instruction based on her testimony that she resisted arrest because she was in pain and unable to breathe. *Bowen v. State,* 162 S.W.3d 226 (Tex. Crim. App. 2005); (Appellant Br. at 16).

25

However, there is another case that provides better insight as to whether the trial court erred in refusing Tennyson's request for a necessity instruction.

In that other case, Jaime Juarez, Jr. was charged with aggravated assault on a peace officer after he bit the finger of the officer who was attempting to place him in handcuffs. *Juarez v. State*, 308 S.W.3d 398, 400 (Tex. Crim. App. 2010). At trial, Juarez testified that he bit the officer because he felt like he was suffocating and needed the officer to get off of him. *Ibid*. Nevertheless, Juarez denied that the bite was intentional, knowing, or reckless. *Id*. at 400-01. As a result of this denial, the court refused Juarez's request for a necessity instruction. *Id*. at 401. But on review, the 12th Court of Appeals reversed Juarez's conviction and remanded the case for a new trial, holding that he was entitled to a necessity instruction because he admitted to biting the officer. *Ibid*.

Later, the Court of Criminal Appeals granted review to consider whether a defendant must admit every element of the charged offense, including the applicable culpable mental state, to be entitled to a necessity instruction. *Ibid*. Ultimately, the Court of Criminal Appeals disagreed with the 12th Court's conclusion that Juarez's admission to the act was enough to warrant a necessity

26

instruction. *Id*. at 404. For a necessity instruction, the Court emphasized that the confession and avoidance doctrine requires admitting to both the act *and* the requisite mental state. *Ibid*.

Although Juarez denied that the bite was intentional, knowing, or reckless, the Court of Criminal Appeals determined that his mental state could have reasonably been inferred from his testimony that he bit the arresting officer because the officer was causing him to suffocate. *Id*. at 405. Therefore, the confession and avoidance doctrine was satisfied, and the trial court should have granted Juarez's request for a necessity instruction. *Ibid*.

> 3. *In this case, Tennyson flatly denied intentionally or knowingly colliding with Deputy Taylor's patrol car, so he was not entitled to a necessity instruction.*

As it relates to Tennyson, the important takeaway from *Juarez* is that a defendant cannot flatly deny the applicable culpable mental state and still be entitled to a necessity instruction. *Juarez*, 308 S.W.3d at 406. At trial, Tennyson's lawyer argued that his client rammed into the patrol car because he was afraid that he would be beaten by Deputy Taylor. (4 R.R. at 177-78.) Likewise, Tennyson's appellate counsel claims that in colliding with the patrol car, his client "undertook the least violent means available" to avoid potentially

27

being "shot and killed." (Appellant Br. at 18.) However, Tennyson's testimony at trial clearly precludes these arguments. (4 R.R. at 54, 117-118.) In fact, Tennyson's trial counsel asked Tennyson directly why he hit Deputy Taylor:

[DEFENSE COUNSEL]: Now, why did you back into him?

[TENNYSON]: It wasn't – I really didn't know how far he was behind me, but I stopped. I panicked, because I thought I was in the middle of Martin Luther King. It's hard to kind of – the Suburbans have tint on the back of them, and so with him having the lights real bright, all you can see is the lights hitting you in the face off the rearview mirrors. And I thought I was in the middle of Martin Luther King, and the first thing I was thinking was I'm fixing to get hit by oncoming traffic, because at that time of night there's a lot of drunk people that don't really pay attention to stop signs and lights, period. And so that's why I stopped and waited. And then I put it in reverse to back up, and as soon as I felt that I hit him I took off because I didn't realize he was that close.

(4 R.R. at 54.)

Later, on redirect, Tennyson's lawyer made another effort to establish a necessity defense, but his client again failed to take the bait:

28

| | |
|---|---|
| [DEFENSE COUNSEL]: | Now, you said you took off because you was in fear, and you rammed this car because of what happened in the incident at your house on November of 2014 where an officer came down and drew down guns on you and your girls in the backyard? |
| [TENNYSON]: | Yes, sir. That's why I took off. |
| [DEFENSE COUNSEL]: | And you were trying to get to some relative's house or somebody so they could witness whatever happened when you turned yourself in? |
| [TENNYSON]: | Yes, sir. And like I said, when I put it in reverse, my intention was – I thought I was in the street. But I mean, there's no denying that I did hit him, you know, but it wasn't like I smashed the gas and kept it in reverse trying to run him off the road or anything. It wasn't like that. As soon as I felt contact with him, I shot off in the other direction. |

(4 R.R. at 117-18.)

Although Tennyson admitted to hitting Deputy Taylor's patrol car, he never wavered from his explanation that he drove in reverse because his Yukon jutted out into the intersection and he feared being hit by cross traffic. (4 R.R. at 54, 117-18.) In other words, Tennyson twice denied causing the

29

collision intentionally or knowingly, and neither of the requisite culpable mental states can be inferred from his testimony. Since the court's charge already included definitions for "intentionally" and "knowingly," the jury was properly equipped to render a verdict in this case. (C.R. at 55.)

Tennyson flatly denied the applicable culpable mental state when he claimed to have hit the patrol car by mistake, and his defense counsel's argument to the contrary is not evidence. (4 R.R. at 54.) Therefore, the necessity defense would only apply to evading arrest, and not to the aggravated assault charge for which Tennyson was actually on trial. Simply put, Tennyson was not entitled to a necessity instruction because he was not on trial for evading arrest. As a result, it was not error for the trial court to refuse the requested charge instruction.

> 4. *Even if this Court finds that Tennyson satisfied the confession and avoidance doctrine, he was still not entitled to a necessity instruction. For that defense, conduct can only be justified when the circumstances demand a split-second decision.*

For necessity defenses, the Texas Penal Code finds that a defendant's conduct is not justified unless he reasonably believes the conduct is immediately necessary to avoid imminent harm. Tex. Penal Code Ann. § 9.22

30

(West 2015). In most cases, the jury determines whether the defendant's belief was reasonable. *Sanders v. State*, 707 S.W.2d 78, 79-80 (Tex. Crim. App. 1986). However, the defendant's belief may be deemed unreasonable as a matter of law when undisputed facts demonstrate a complete absence of evidence of immediate necessity or imminent harm. *Graham v. State*, 566 S.W.2d 941, 952 n.3 (Tex. Crim. App. 1978).

In another case, Edward Ford requested a necessity instruction, claiming that he evaded arrest because he believed the officer wanted to kill him. *Ford v. State*, 112 S.W.3d 788, 793 (Tex. App.—Houston [14th Dist.] 2003, no pet.). On appeal, the issue was whether Ford "reasonably believed his conduct was necessary to avoid imminent harm." *Id*. at 793. After reviewing the record, the 14th Court of Appeals found that the officer did not pull his weapon until after Ford reached under the seat of his car, started his vehicle, and fled. *Ibid*. Therefore, the appellate court found that there was no evidence of imminent harm, so the necessity instruction was properly omitted. *Id*. at 793-94.

Here, Tennyson claims that he fled due to a generalized fear of police violence based on past encounters with law enforcement. (4 R.R. at 48-49.) However, he also admitted that on the night in question, Deputy Taylor spoke

31

calmly and did not pull his weapon or grab him at any point during the stop. (4 R.R. at 99-100.) As in *Graham*, the undisputed facts of Tennyson's traffic stop demonstrate a complete absence of immediate necessity or imminent harm, so his belief was unreasonable as a matter of law. *See Graham*, 566 S.W.2d at 952 n.3.

> 5. *The trial court properly denied Tennyson's request for a necessity instruction.*

Although a defendant is entitled to a charge instruction on any defensive issue raised by the evidence, certain conditions must be met. *Granger*, 3 S.W.3d at 38. First, a necessity instruction requires satisfying the confession and avoidance doctrine, so the defendant must admit not only to the act, but also to the requisite mental state. *Juarez*, 308 S.W.3d at 406. Here, Tennyson admitted to ramming the patrol car, but he maintained that the collision was unintentional. (4 R.R. at 54, 117-18.) As a result, the confession and avoidance doctrine was not satisfied.

What's more, none of the evidence in the record, including Tennyson's testimony, supports a finding that he reasonably believed that ramming into a patrol car was immediately necessary to avoid any kind of imminent harm.

32

*See Neal v. State*, 2016 Tex. App. LEXIS 3793, *41 (Tex. App.—Tyler Apr. 13, 2016) (mem. op., not designated for publication). Therefore, Tennyson was not entitled to a necessity instruction because his belief was unreasonable as a matter of law. (4 R.R. at 99-100); *Graham*, 566 S.W.2d at 952, n.3.

Following his third and fourth points of error, Tennyson complains that he was harmed by the trial court's refusal to submit his requested necessity instruction. But in *Ngo*, the Court of Criminal Appeals explained that it conducts a harm analysis only if it has already concluded that the trial court committed charge error. *Ngo*, 175 S.W.3d at 743. Here, the trial court did not commit charge error, because Tennyson was not entitled to a necessity instruction. Therefore, there is no need for a harm analysis, and Tennyson's third point of error should be overruled. *See Kunkle*, 771 S.W.2d at 444.

COUNTERPOINT FOUR: EVEN WITH A FACT QUESTION REGARDING THE LEGALITY OF TENNYSON'S TRAFFIC STOP, HE WAS NOT ENTITLED TO AN ARTICLE 38.23 INSTRUCTION BECAUSE EVIDENCE OF THE AGGRAVATED ASSAULT WAS NOT "OBTAINED IN VIOLATION OF THE LAW."

In his fourth point of error, Tennyson claims that there was a fact question regarding the legality of his traffic stop, so the trial court should have granted his request for an art. 38.23 probable cause instruction.

(Appellant Br. at 20-21.) But evidence of Tennyson's aggravated assault could not possibly have been obtained in violation of the law, because it did not even exist when Deputy Taylor initiated the allegedly questionable stop. Therefore, the constitutionality of Tennyson's stop did not materially affect whether evidence of the aggravated assault was lawfully obtained, and the trial court properly refused to include a probable cause instruction in the jury charge.

## A. STANDARD OF REVIEW

### 1. When a trial court improperly denies a requested instruction, reversal is required unless the denial was harmless error.

When the trial court improperly denies a requested instruction, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Ngo*, 175 S.W.3d at 743. If the defendant objected, charge error requires reversal when there is "some harm" to the defendant's rights. *Ibid*. However, if the defendant fails to object, reversal is only required for "egregious harm." *Id*. at 743-44.

34

**B.**   **APPLICABLE LAW**

1. *For a defendant to be entitled to an Article 38.23 instruction, there must be a disputed fact that materially affects whether evidence was lawfully obtained.*

A defendant's right to an art. 38.23 jury instruction is "limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509-510 (Tex. Crim. App. 2007). Additionally, three requirements must be satisfied: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510.

**C.**   **ARGUMENT**

1. *The legality of an initial detention or arrest is irrelevant to the question of whether a defendant resists arrest or commits aggravated assault on a peace officer.*

In another case, Raymond Cooper, Jr. argued that the trial court abused its discretion by refusing to suppress evidence resulting from what he claimed was an illegal arrest. *Cooper v. State*, 956 S.W.2d 95, 96 (Tex. App.—Tyler 1997, pet. ref'd). In that case, an officer approached Cooper about suspicious

35

behavior that he observed in a parking lot, but Cooper refused to provide his name and tried to leave. *Ibid*. Next, the officer grabbed Cooper's arm, and the two men struggled. *Ibid*. During the fight, Cooper attempted to choke the officer, and was later convicted for aggravated assault on a peace officer. *Ibid*.

On appeal, Cooper argued that the trial court should have granted his motion to suppress because the officer had no reason to detain him initially. *Id*. at 97. However, the 12th Court of Appeals noted that the evidence of Cooper's aggravated assault on the officer did not exist at the time of the attempted detention, but instead came into existence only after the officer attempted to detain and question Cooper. *Id*. at 98. Therefore, even if the arrest was illegal, evidence of the aggravated assault was admissible because it was not "obtained in violation of the law."

> *2. Evidence of Tennyson's assault was admissible because it was not obtained in violation of the law. Therefore, he was not entitled to a probable cause instruction, and there is no need for a harm analysis.*

Like *Cooper*, evidence that Tennyson committed aggravated assault came into existence only *after* Deputy Taylor initiated the allegedly illegal traffic stop. As far as Tennyson's requested probable cause instruction is concerned, art. 38.23 deals with exclusion of illegally obtained evidence of a

prior crime, but does not provide any protection to commit new crimes. *See Martinez v. State*, 91 S.W.3d 331, 331 (Tex. Crim. App. 2002). Even if Tennyson's traffic stop was questionable, there is no disputed fact in this case that materially affects whether evidence of the aggravated assault was lawfully obtained. *See Madden*, 242 S.W.3d at 510.

Additionally, Tennyson complains that he was harmed by the trial court's refusal to submit his requested probable cause instruction. But as previously discussed, an appellate court conducts a harm analysis only after concluding that the trial court committed charge error. *Ngo*, 175 S.W.3d at 743. In this case, the trial court did not commit charge error, because Tennyson was not entitled to a probable cause instruction. Therefore, there is no need for a harm analysis, and Tennyson's fourth point of error should be overruled. *See Kunkle*, 771 S.W.2d at 444.

COUNTERPOINT FIVE: *SALINAS V. STATE* WAS DECIDED EIGHT MONTHS AFTER TENNYSON'S TRIAL ENDED. BECAUSE ITS HOLDING APPLIES PROSPECTIVELY, TENNYSON IS NOT ENTITLED TO A CONSOLIDATED COURT COST FEE MODIFICATION.

After the Court of Criminal Appeals decided *Salinas v. State,* both Salinas and the State filed motions for rehearing. The Court recently denied both

motions, and its holding in *Salinas* still applies prospectively. Because Tennyson was convicted before the effective date in *Salinas,* he is not entitled to relief under his fifth and final point of error.

**A.    STANDARD OF REVIEW**

*1. The standard of review is abuse of discretion.*

A challenge to a withdrawal of funds notification is reviewed for an abuse of discretion. *Williams v. State*, 332 S.W.3d 694, 698 (Tex. App.—Amarillo 2011, pet. denied). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles. *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005). The reviewing court may modify a withdrawal order on direct appeal if the evidence is insufficient to support the assessment of court costs. *Johnson v. State*, 405 S.W.3d 350, 355 (Tex. App.—Tyler 2013, no pet.).

**B.** **APPLICABLE LAW**

*1. Tennyson's court costs include a $133 fee, mandated by Local Government Code § 133.102. The relevant portions are provided below.*

## Consolidated Fees on Conviction.

(a)   A person convicted of an offense shall pay as a court cost, in addition to all other costs:

(1)   $133 on conviction of a felony;

(e)   The comptroller shall allocate the court costs received under this section to the following accounts and funds so that each receives to the extent practicable, utilizing historical data as applicable, the same amount of money the account or fund would have received if the court costs for the accounts and funds had been collected and reported separately, except that the account or fund may not receive less than the following percentages:

(1)   abused children's counseling 0.0088 percent;

(6)   comprehensive rehabilitation 9.8218 percent.

Tex. Local Gov't Code § 133.102 (West 2015).

**C.** **ARGUMENT**

*1. The State concedes that subsections (e)(1) and (e)(6) of Texas Local Government Code § 133.102 are unconstitutional.*

On March 8, 2017, the Court of Criminal Appeals announced that two subsections of Texas Local Government Code § 133.102 were unconstitutional. *Salinas v. State*, 2017 Tex. Crim. App. LEXIS 284, *11-16

(Tex. Crim. App. Mar. 8, 2017) (designated for publication). Specifically, the subsections ordering payment for "abused children's counseling" and "comprehensive rehabilitation" were a legislative overreach that did not serve any legitimate criminal justice purposes. *Id*. at 8, 10. Later, the Court clarified that directing court costs to these funds is unconstitutional solely because it violates a right of the courts under the separation of powers doctrine; there is no constitutional issue with the fee that relates to a defendant's personal rights. *Id*. at 14. In fact, the $133 total could remain untouched, so long as the legislature redirects the funds to a legitimate criminal justice purpose. *Id*. at n. 54.

### 2. The Salinas holding applies prospectively.

Previously, the United States Supreme Court held that when a new rule is created to address federal constitutional errors in criminal cases, the rule applies retroactively to all cases, state or federal, pending on direct review or not yet final, without exception. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). However, the statute challenged in *Salinas* is a state law, so *Griffith* does not apply. *Salinas*, 2017 Tex. Crim. App. LEXIS 284 at *13. Therefore, the Court of Criminal Appeals was free to devise its own retroactivity rules. *Ibid*.

In its opinion, the Court concluded that declaring a statute unconstitutional on its face creates a "new" rule that warrants a retroactivity analysis. *Id.* at \*12. Because § 133.102 (e)(1) and (e)(6) do not violate a defendant's personal rights, the Court used a balancing test to determine whether the new rule should apply retroactively. *Id*. at 13. In doing so, the Court considered (1) the purpose of the new rule; (2) the extent to which law enforcement relied on the old rule; and (3) how retroactively applying the new rule would impact the administration of justice. *Id*. at 13; *Stovall v. Denno*, 388 U.S. 293, 297 (1967). Because each of the three factors weighed against retroactivity, the Court determined that the new rule would only apply prospectively, to trials ending after March 8, 2017. *Salinas*, 2017 Tex. Crim. App. LEXIS 284 at \*14-15.

> *3. Tennyson admits that he is not entitled to a fee reduction because Salinas applies prospectively.*

In this case, Tennyson's trial ended on June 29, 2016, more than eight months before the Court of Criminal Appeals decided *Salinas*. (1 C.R. at 44.) In fact, he concedes that *Salinas* does not apply to his case. (Appellant Br. at 43.) Nevertheless, he raises the issue to preserve error

41

should the Court of Criminal Appeals reconsider its retroactivity holding. (Appellant Br. at 40.) But even before Tennyson filed his brief, the Court of Criminal Appeals denied both the State's and Salinas's motions for rehearing, and its holding in *Salinas* still applies prospectively. Consequently, Tennyson is not entitled to a fee reduction, and his fifth point of error should be overruled.

## CONCLUSION

First, Tennyson argues that the trial court erred in overruling his *Batson* challenges. But Tennyson failed to rebut any of the State's race-neutral explanations for each of the challenged strikes, nor did he present any other evidence of racial discrimination. Therefore, this Court has no basis to conclude that the trial court's ruling was clearly erroneous. Because the State did not discriminate against prospective jurors on the basis of race, Tennyson is not entitled to a new trial; his first ground should be overruled.

Next, Tennyson argues in his second issue that the evidence is legally insufficient to support the deadly weapon element of the charged offense. However, a deadly weapon can be anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Here,

42

Tennyson intentionally rammed an occupied patrol car. And during the flight immediately following the assault, he drove at dangerous speeds on wet roads until he finally crashed into law enforcement vehicles. Clearly, the State presented sufficient evidence for a rational jury to conclude that Tennyson's driving presented a real danger that was capable of causing death or serious bodily injury, and his second issue should be overruled.

In his third issue, Tennyson complains that the trial court should have granted his request for a necessity instruction in the jury charge. However, defensive instructions are not submitted without supporting evidence, and Tennyson testified that he never intended to collide with Deputy Taylor's patrol car. Therefore, the confession and avoidance doctrine was not satisfied, and he was not entitled to a necessity instruction. Additionally, there is no evidence that Tennyson's actions were immediately necessity to avoid imminent harm, so the trial court properly denied the requested instruction. Therefore, Tennyson's third point of error should be overruled.

In his fourth issue, Tennyson claims that there was a fact question regarding the legality of his traffic stop, so the trial court should have granted his request for a probable cause instruction. But the constitutionality of

Tennyson's stop did not materially affect whether evidence of the aggravated assault was lawfully obtained, so the trial court properly denied Tennyson's request. Consequently, his fourth point of error is without merit and should be overruled.

Lastly, Tennyson seeks to have a portion of his court costs deleted based on case law that he readily admits does not apply to him. Because Tennyson's trial ended before *Salinas* was decided, he is not entitled to a fee reduction; his fifth and final ground should be overruled.

## PRAYER

The State asks the Court to overrule Gregory Tennyson's five points of error and affirm the judgment of the 241st District Court, Smith County, Texas.

Respectfully submitted,

D. Matt Bingham
Smith County Criminal District Attorney


*SK Bales Mikkelsen*

Sarah K. Bales Mikkelsen
Asst. Criminal District Attorney
Bar No. 24087139
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)
smikkelsen@smith-county.com


## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4 (i)(3), this document contains 9,366 words.


*SK Bales Mikkelsen*

Sarah K. Bales Mikkelsen

45

**CERTIFICATE OF SERVICE**

On July 31, 2017, the following have been completed:

(1) The original legible copy of the State's Response to Appellant's Brief in the above numbered cause has been sent via electronic filing to the Clerk of the Court of Twelfth Court of Appeals.

(2) A legible copy of the State's Response to Appellant's Brief in the above numbered cause has been sent has been sent via electronic filing to:

James W. Huggler, Jr.
Attorney at Law
100 E. Ferguson, Suite 805
Tyler, Texas 75702

*SK Bales Mikkelsen*

Sarah K. Bales Mikkelsen
Asst. Criminal District Attorney
Bar No. 24087139
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)
smikkelsen@smith-county.com

46